## PEOPLE v HALL

Docket No. 223182. Submitted June 6, 2001, at Grand Rapids. Decided January 18, 2002, at 9:00 A.M. Leave to appeal sought.

Chavez D. Hall was convicted by a jury in the Calhoun Circuit Court, James C. Kinglsey, J., of first-degree felony murder, arson of real property, assault with intent to rob while armed, and first-degree criminal sexual conduct. The defendant, who was fifteen years old at the time he was questioned and arrested with regard to the charges, appealed.

The Court of Appeals *held*:

1. The procedures stated in MCL 764.27 and MCR 5.934 that govern the arrest, interrogation, and custody of juveniles were not followed. However, the totality of the circumstances and the evidence establishes that the defendant's statement to the police was voluntary. The court did not err in denying the defendant's motion to suppress his statement to the police.

2. The court erred in failing to instruct the jury regarding the elements of second-degree murder. The conviction of first-degree felony murder must be reversed and the matter must be remanded for entry of a conviction of second-degree murder and sentencing on that conviction and resentencing on the remaining convictions. The prosecution may seek a new trial on the felony-murder charge by providing notice to the trial court before resentencing.

3. The convictions of felony murder and assault with intent to rob while armed did not violate double jeopardy principles because the crimes of which the defendant was convicted were committed against different victims.

Affirmed in part, reversed in part, and remanded.

1. CRIMINAL LAW — EVIDENCE.

A statement by a juvenile defendant obtained in violation of the procedures governing the arrest, interrogation, and custody of juveniles stated in MCL 764.27 and MCR 5.934 need not be suppressed automatically; the violation is properly considered as part of the totality of the circumstances in determining the voluntariness of the statement.

2. HOMICIDE — TRIAL — JURY INSTRUCTIONS.

   A trial court must instruct the jury on the necessarily included lesser offense of second-degree murder in all cases in which first-degree murder is one of the charged offenses (MCL 750.316, 750.317).

3. CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

   Double jeopardy does not apply to the prosecution of crimes committed against different victims, even where the crimes occurred during the same criminal transaction.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Susan K. Mladenoff*, Prosecuting Attorney, and *Jennifer Kay Clark*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett*), for the defendant on appeal.

Before: NEFF, P.J., and DOCTOROFF and WILDER, JJ.

WILDER, J. Defendant appeals as of right from his jury trial convictions of first-degree felony murder, MCL 750.316, arson of real property, MCL 750.73, assault with intent to rob while armed, MCL 750.89, and first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(c). As a result of these convictions, defendant received life imprisonment for the murder conviction, twenty to forty years' imprisonment for both the assault and CSC convictions, and five to ten years' imprisonment for the arson conviction. We affirm in part, reverse in part, and remand this case for resentencing.

I. FACTS AND PROCEEDINGS

Defendant's convictions arose out of the attempted robbery of King's Garden Health Spa in Battle Creek in the early morning hours of January 27, 1999. Eyewitnesses testified that defendant and two other indi-

viduals[1] entered the spa and asked for money. Frustrated that they could not find any money, the codefendants began beating the four women present inside the spa. While three of the women were being beaten, defendant sexually assaulted the fourth. After being sexually assaulted by defendant, the fourth woman was also beaten by a codefendant. As a result of the beatings, three of the women fell unconscious; two regained consciousness, noticed that the building was on fire, screamed for everyone to get out, and were able to flee the building. The other two women in the spa died, one from carbon monoxide and smoke inhalation[2] and the other from a broken pelvis, a stab wound, and burns.

After the incident, Angela Chase spoke to her mother about what had occurred. Apparently, on the basis of this conversation, Chase's parents informed the police of the potential involvement of Chase and defendant in the incident. Through Chase's parents, the police located Chase on January 31, 1999. Defendant was with Chase when the police located her, and on the basis of the information provided by Chase's parents, the police took defendant into custody.

Defendant, who was fifteen years old at the time of his arrest, was taken to the police station and advised of his *Miranda*[3] rights. Although defendant's parents were not present during the interrogation and the

---

[1] Codefendants Darrin Mills and Jamie Maclam were tried separately from defendant and found guilty of assault with intent to rob while armed, MCL 750.89, and second-degree murder, MCL 750.317, respectively. Each was sentenced to life in prison. A fourth person, Angela Chase drove the defendant and his codefendants to and from the murder scene and received immunity from prosecution for her testimony at trial.

[2] Defendant's felony-murder conviction arose out of the death of this woman; he was found not guilty of the other death.

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

police apparently had unsuccessfully attempted to contact defendant's grandmother before questioning him, the police spoke with defendant's grandmother shortly after the interview had taken place. Defendant, who had never been in police custody before his arrest in this case, apparently had had more than de minimus prior contact with the police. Defendant waived his *Miranda* rights and agreed to give a statement.

During questioning, which lasted approximately forty-five minutes, defendant admitted that he was present when the killings and arson took place, but denied any involvement in these crimes. Defendant further denied seeing or participating in any sexual assaults. While defendant was encouraged to be truthful, he was not coerced or abused during the interview. As a result of the police investigation, defendant was charged with one count of open murder,[4] two counts of felony murder,[5] one count of arson,[6] four counts of assault with intent to rob while armed,[7] one count of CSC-I,[8] and one count of possession of a firearm during the commission of a felony.[9] Before trial, defendant moved to suppress his statement to the police, arguing that the statement was taken in violation of MCL 764.27 and also that defendant's statement was not knowingly and voluntarily made. The trial court found that on the basis of the totality of the circumstances, defendant's statement, which was taken in violation of MCL 764.27, was knowing and

---

[4] MCL 750.316.

[5] *Id.*

[6] MCL 750.73.

[7] MCL 750.89.

[8] MCL 750.520b(1)(c).

[9] MCL 750.227b.

voluntary. Specifically, the trial court noted that defendant had been read his *Miranda* rights, that he understood those rights and chose to waive them, that the questioning was not coercive or drawn out, that the police attempted to contact defendant's grandmother before questioning him, that defendant had had previous contact with the police, and that defendant was not intoxicated, ill, abused, or threatened when he decided to waive his *Miranda* rights. Thus, defendant's statement, which had been audiotaped, was played for the jury at trial.

Defendant did not testify at trial. His counsel did cross-examine prosecution witnesses and call witnesses on defendant's behalf. At the close of the case, defendant moved for a directed verdict on all the charges except the charges of assault with intent to rob while armed. The trial court denied this motion with regard to all the charges except the open murder charge, which it dismissed, finding that the evidence presented would not support a finding of premeditation. Thus, the only murder counts before the jury at the time of deliberations were the felony-murder counts. Following deliberations, the jury returned a verdict acquitting the defendant of one of the felony-murder counts, three of the four counts of assault with intent to rob while armed, and the felony-firearm charge. However, the jury found defendant guilty of the remaining charges.

## II. ANALYSIS

### A. DEFENDANT'S STATEMENT TO THE POLICE

Defendant asserts, on two alternate grounds, that the trial court erred in not suppressing his statement.

First, defendant contends that his statement to the police should have been suppressed solely because the dictates of MCL 764.27 and MCR 5.934, which govern the arrest, interrogation, and custody of juveniles, were not followed. Second, defendant contends his statement was involuntary considering the totality of the circumstances, including the failure of the police to comply with MCL 764.27 and MCR 5.934. We disagree with both arguments.

In *People v Good*, 186 Mich App 180; 463 NW2d 213 (1990), this Court held that a statement obtained in violation of MCL 764.27 and MCR 5.934 is not subject to automatic suppression because of the violation. Rather, the violation is considered as part of the totality of the circumstances to determine whether the statement was voluntary. See also *In re SLL*, 246 Mich App 204, 209; 631 NW2d 775 (2001), *People v Givans*, 227 Mich App 113, 121; 575 NW2d 84 (1997), and *People v Rode*, 196 Mich App 58, 69; 492 NW2d 483 (1992), rev'd on other grounds sub nom *People v Hana*, 447 Mich 325; 524 NW2d 682 (1994). Accordingly, defendant's first claim of error must fail and we address defendant's second argument.

A trial court's findings at a suppression hearing are given deference by this Court. *People v Abraham*, 234 Mich App 640, 644; 599 NW2d 736 (1999); *People v Mendez*, 225 Mich App 381, 382; 571 NW2d 528 (1997). Therefore, while we conduct an independent review of the voluntariness of a statement, we will not disturb the trial court's factual findings unless they are clearly erroneous. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000); *People v Givans*, 227 Mich App 113, 119; 575 NW2d 84 (1997). A finding of fact is clearly erroneous if, after review-

ing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made. *In re SLL, supra* at 208-209; *Givans, supra*; *Mendez, supra*.

In *Givans, supra* at 121, this Court provided a list of factors to be considered in determining whether a juvenile's statement is voluntary:

> The factors that must be considered in applying the totality of the circumstances test to determine the admissibility of a juvenile's confession include (1) whether the requirements of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), have been met and the defendant clearly understands and waives those rights, (2) the degree of police compliance with MCL 764.27; MSA 28.886 and the juvenile court rules, (3) the presence of an adult parent, custodian, or guardian, (4) the juvenile defendant's personal background, (5) the accused's age, education, and intelligence level, (6) the extent of the defendant's prior experience with the police, (7) the length of detention before the statement was made, (8) the repeated and prolonged nature of the questioning, and (9) whether the accused was injured, intoxicated, in ill health, physically abused or threatened with abuse, or deprived of food, sleep, or medical attention.

See also *In re SLL, supra* at 209; *People v Fike,* 228 Mich App 178, 182; 577 NW2d 903 (1998).

In the present case, as noted above, before questioning defendant the police attempted to reach defendant's grandmother but were unable to reach her until defendant's interview was completed. Defendant's statement was recorded, and the transcript establishes that defendant was advised of his *Miranda* rights, stated that he understood them, and waived them. The questioning was not unduly prolonged or coercive, and defendant was not abused.

See *Fike, supra* at 182. Although MCL 764.27 and MCR 5.934 were violated, defendant was of reasonable intelligence and had sufficient experience with the police that these violations are not controlling. In summary, the evidence establishes that the trial court did not clearly err in finding that defendant's statement to the police was voluntary. *Sexton, supra; Givans, supra* at 119.

### B. IMPROPER JURY INSTRUCTIONS

Defendant next asserts that the trial court erred in failing to instruct the jury on the crime of second-degree murder. MCL 750.317. Because we are bound by *People v Jenkins*, 395 Mich 440, 442; 236 NW2d 503 (1975), we agree. This Court reviews de novo claims of instructional error. *People v Hubbard (After Remand)*, 217 Mich App 459, 487; 552 NW2d 493 (1996).

As noted above, the jury was neither instructed on the elements of second-degree murder nor provided with second-degree murder as a possible verdict on the verdict form. In *Jenkins, supra* at 442, our Supreme Court quite clearly held that in all cases in which first-degree murder is one of the charged offenses, the trial court must instruct the jury on the necessarily included lesser offense of second-degree murder:

> Because of the significant differences in the penalties between first- and second-degree murder, and because every charge of first-degree murder necessarily includes the lesser offense of second-degree murder, in every trial for first-degree murder, *including felony murder*, the trial court is required to instruct the jury *sua sponte*, and even

over objection, on the lesser included offense of second-degree murder. [*Id.* (emphasis added).]

Because the trial court failed to instruct the jury on second-degree murder, it committed error. Thus, we must determine whether this error requires reversal of defendant's first-degree murder conviction.

On appeal, the prosecution argues that *Jenkins* should no longer apply to felony-murder convictions. However, because we are required by stare decisis to follow decisions of our Supreme Court, *Fletcher v Fletcher*, 200 Mich App 505, 511; 504 NW2d 684 (1993), we must reject this argument.

Nevertheless, we do take the occasion to note that in the present case the trial court, prosecutor, *and* defense counsel all agreed that the evidence would not support, standing alone, a second-degree murder verdict against defendant. In addition, besides stipulating that a second-degree murder instruction should not be given to the jury, after the trial court had completed its instructions to the jury, defense counsel expressed satisfaction with the instructions as given by the court.

In *People v Carter*, 462 Mich 206; 612 NW2d 144 (2000), the Supreme Court held that when defense counsel expressed satisfaction with the trial court's proposed and subsequent instructions to the jury, such approval constitutes a waiver that extinguishes any error regarding the instructions. *Id.* at 215-216. The Court stated:

"Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." It

> is presumed that waiver is available in " 'a broad array of constitutional and statutory provisions' . . . ." While the defendant must personally make an informed waiver for certain fundamental rights such as the right to counsel or the right to plead not guilty, for other rights, waiver must be effected by action of counsel.
>
> " 'Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial.' As to many decisions pertaining to the conduct of the trial, the defendant is 'deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.' " Thus, decisions by counsel are generally given effect as to what arguments to pursue, . . . what evidentiary objections to raise, . . . and what agreements to conclude regarding the admission of evidence . . . . Absent a demonstration of ineffectiveness, counsel's word on such matters is the last. [*Id.* at 217-218 (citations omitted).]

Further, the Court reiterated that counsel may not harbor error as an appellate parachute. *Id.* at 214.

The facts presented herein raise the question whether, because of the specific evidence in the case, trial counsel can acquiesce in, and thus waive any error created by, the trial court's determination that contrary to *Jenkins*, although the jury is to be instructed regarding the elements of first-degree felony murder the jury should not be instructed on the elements of second-degree murder. Since we are bound by *Jenkins*, we invite the Supreme Court to consider this important question.

In summary, *Jenkins* compels us to reverse defendant's first-degree murder conviction and remand this case for both entry of a conviction of second-degree murder and sentencing on that conviction. *Jenkins*,

*supra* at 443. In addition, because defendant's sentences for his other convictions may have been affected by the conviction of first-degree murder, we also remand for resentencing on all defendant's remaining convictions. *People v Plummer*, 229 Mich App 293, 309; 581 NW2d 753 (1998). However, if, on remand, the prosecution believes that justice would be best served by seeking a new trial on the felony-murder charge, it may do so by providing the trial court with notice of that desire before resentencing. *Jenkins, supra* at 442-443. Finally, we invite the Supreme Court to consider whether *Jenkins* is viable as it applies to the facts in this case, where the error resulting from the trial court's failure to instruct the jury on the elements of second-degree murder was arguably extinguished as provided by *Carter, supra*.

### C. DEFENDANT'S DOUBLE JEOPARDY CLAIM

Defendant's third contention on appeal is that his convictions of felony murder and assault with intent to rob while armed constitute a violation of double jeopardy, US Const, Am V; Const 1963, art 1, § 15. We disagree. We review de novo a trial court's determination whether a defendant's convictions violate the constitutional ban against double jeopardy. *People v White*, 212 Mich App 298, 304-305; 536 NW2d 876 (1995).

Defendant contends that because the underlying felony on which his felony-murder conviction was predicated was armed robbery, he could not also be convicted of assault with intent to rob while armed. However, a review of the felony information and the jury verdict in this case reveals that defendant's convictions of felony murder and assault with intent to

rob while armed involved two different victims. Because double jeopardy does not apply to crimes committed against different victims, even if the crimes occurred during the same criminal transaction, defendant's convictions of felony murder and assault with intent to rob while armed did not violate double jeopardy principles. *People v Lugo*, 214 Mich App 699, 708; 542 NW2d 921 (1995); *People v Winquest*, 115 Mich App 215, 218; 320 NW2d 346 (1982). Accordingly, defendant is not entitled to relief from his assault conviction.

Affirmed in part, reversed in part, and remanded for resentencing. We do not retain jurisdiction.