# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

KAYLEE ROSE BOOTH,

   Defendant-Appellant.

UNPUBLISHED
March 22, 2016

No. 324630
Charlevoix Circuit Court
LC No. 14-019011-FC

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of assault with intent to murder, MCL 750.83, and was sentenced to serve a prison term of 12 to 25 years. Defendant now appeals as of right. We affirm defendant's conviction but remand this case to the trial court for further proceedings regarding sentencing.

## I. FACTS

Defendant was charged with assault with intent to murder for stabbing Justine Murray in the thigh, arm, and chest with a kitchen knife that had a six-inch blade. The incident occurred outside of an apartment that defendant shared with her boyfriend. Defendant suspected that her boyfriend was cheating on her with Murray. There were multiple eye-witnesses to the stabbing, and defendant admitted that she stabbed Murray multiple times, but argued that she was suffering from temporary insanity and did not have an intent to kill. The jury rejected defendant's insanity defense and convicted her of assault with intent to murder.

## II. JUROR QUESTIONS

At trial, the trial court screened and asked a number of juror questions of witnesses. Defendant first argues that as "a matter of law reform," the practice of allowing such juror questions should stop. However, the Michigan Supreme Court foreclosed defendant's argument in *People v Heard*, 388 Mich 182, 187-188; 200 NW2d 73 (1972). Because we are required to follow *Heard*, we must reject defendant's argument regarding this issue. See *People v Hall*, 249 Mich App 262, 270; 643 NW2d 253 (2002), remanded on other grounds 467 Mich 888 (2002) (this Court is required by *stare decisis* to follow decisions of the Michigan Supreme Court).

-1-

## III. EXPERT TESTIMONY

Defendant next argues that her constitutional right to due process was violated by the admission of Dr. Craig Wendt's opinion testimony regarding the stab wound. We disagree.

Dr. Wendt, who is board-certified as a specialist in general surgery and has been a practicing surgeon for 29 years, treated Murray after the stabbing. He testified that he had treated at least 30 patients for stab wounds. When the prosecutor sought to ask Dr. Wendt whether Murray's chest injury was consistent with her being seated on the ground while her attacker stood over her with the knife stabbing downwards, defense counsel objected on the grounds that Dr. Wendt was not qualified to give an opinion on wound trajectory because he was not a forensic pathologist. The prosecutor responded that the objection "goes to the weight of his testimony" and asserted that the doctor met the standards of MRE 702 and should be allowed to give expert opinion testimony on the issue. The trial court overruled the objection, stating that the question went to Dr. Wendt's observation. Dr. Wendt then answered the question in the affirmative. In regard to Murray's chest wound, he testified that, given the location, the knife could have reached Murray's heart had it gone straight into her chest rather than downward across her body.

Although defendant challenged the trial court's admission of this evidence, she did not do so on the basis that it violated her constitutional right to due process, as she does on appeal. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003) ("Although defendant objected that the testimony was hearsay, that objection did not preserve the issue whether the testimony violated the Confrontation Clauses of the federal and state constitutions . . . ."), and *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996) (objection to evidence on one ground is insufficient to preserve an appellate attack on a different ground). Accordingly, this issue is reviewed as an unpreserved constitutional claim. This Court reviews unpreserved constitutional issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. . . . Finally, once a defendant satisfies these three requirements, an appellate court must exercise discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." [*Id*. (citations omitted).]

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). An abuse of discretion occurs when the trial court chooses an outcome falling outside the principled range of outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

MRE 702 requires a court to ensure that expert testimony is reliable:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial court did not abuse its discretion in admitting Dr. Wendt's opinion testimony regarding the stab wound. That Dr. Wendt does not have a degree in forensic pathology does not mean that he cannot, on the basis of his decades of training and experience as a surgeon, offer a factually supported opinion that Murray's wounds were "consistent with" a downward stabbing trajectory. Dr. Wendt never gave a conclusion on the precise or specific angle of the stabbing action. Rather, he merely opined that a downward trajectory was consistent with the full picture of Murray's injuries to her chest. As a surgeon, Dr. Wendt's expertise is in the use of a scalpel, which is used to cut flesh. This gives him expertise regarding the angle at which a blade enters a body when the appropriate facts are present, such as here, where he had detailed knowledge of the wound from the CAT scan that was administered to Murray.

Even if we were to conclude that the trial court abused its discretion in admitting Dr. Wendt's opinion testimony regarding the stab wound, defendant has not established the third prong of the *Carines* plain error test—that the error affected the outcome of the lower court proceedings. See *Carines*, 460 Mich at 763. Given the location of the wound, the jury had ample evidence to convict defendant of assault with intent to murder regardless of Dr. Wendt's testimony. The wound was to Murray's chest, just below her breast, in a vital region of her body. The jurors had ample reason to determine that stabbing someone in the chest with a kitchen knife with a six-inch blade is evidence of an intent to murder. Because the verdict would not have differed without Dr. Wendt's testimony, defendant cannot demonstrate plain error affecting substantial rights.

## IV. PROSECUTORIAL ERROR[1]

Defendant next argues that prosecutor comments denigrated defense counsel in violation of defendant's rights to a fair trial and due process. We disagree.

---

[1] We recently held in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), that the term "prosecutorial error" is preferred over the more commonly used phrase of "prosecutorial misconduct," which should be reserved for only the most extreme cases when a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct. See also *People v Bosca*, 310 Mich App 1, 25-26; 871 NW2d 307 (2015) (applying the *Cooper* distinction). Accordingly, we will adopt this same convention.

-3-

During closing argument, without objection, the prosecutor stated:

> This is a case of Assault with Intent to Murder, plain and simple. You're gonna hear a bunch of instructions and you're gonna see a little *hocus pocus* and maybe you can find her guilty of this and maybe you can find her guilty of this and maybe you can find her guilty of this, and you'll hear all that from the Defense. I'm not gonna give you *hocus pocus*. This is what she's charged with. This is what I'm asking you to convict her of. This is taking responsibility. Nothing else is taking responsibility. [Emphasis added.]

During defense counsel's closing, she stated:

> In [the prosecutor's closing], he said I'm not going to talk to you about all that *hocus pocus*, those other jury instructions that the Judge might give you. I'm not going to talk to you about that *hocus pocus*. It's not *hocus pocus*, it's the Judge's instructions to you; it's what you're required to follow in this case. [Emphasis added.]

And finally, during the prosecutor's rebuttal, he stated:

> *Hocus pocus*? What I was talking to you about and you'll – let me read the instruction to you. And I don't mean that certainly to denigrate Judge Pajtas but I'm – what I mean is here's an instruction you're gonna hear:

> "In this case there are several different crimes that you may consider. When you discuss the case you must consider the crime of Assault with Intent to Murder first. If you all agree the defendant's guilty of that crime you may stop your discussions and return your verdict.

> If you believe the defendant is not guilty of Assault with Intent to Murder or you cannot agree about that crime, you should consider the less serious crime of Assault with Intent to Cause Great Bodily Harm Less Than Murder.

> You decide how long to spend on Assault with Intent to Murder before discussing Assault with Intent to Cause Great Bodily Harm Less Than Murder. You can go back to Assault with Intent to Murder after Assault with Intent to Cause Great Bodily Harm Less Than Murder if you want to."

> That's what I was talking about. Maybe *hocus pocus* is the wrong word. I don't think you need to do a lot of back and forth here, folks. [Emphasis added.]

Generally, a defendant must raise a timely and specific objection in the trial court in order to preserve the issue of prosecutorial error on appeal. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Because defense counsel did not object to the alleged instance of prosecutorial error, this issue is unpreserved and review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. Further, reversal is not required if any prejudicial effect could have been cured by a timely jury instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). The prejudicial effect of most improper prosecutorial

statements can be cured by such instructions, and jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235.

The test of prosecutorial error is whether the defendant was denied a fair and impartial trial. *Watson*, 245 Mich App at 586.

> When reviewing a claim of prosecutorial misconduct, this Court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. Further, the propriety of a prosecutor's remarks will depend upon the particular facts of each case. In addition, a prosecutor's comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. [*People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003) (citations omitted).]

While "[p]rosecutors are typically afforded great latitude regarding their arguments and conduct at trial[,] . . . [they] may not suggest that defense counsel is intentionally attempting to mislead the jury." *Unger*, 278 Mich App at 236 (citations omitted). Similarly, a prosecutor may not attack the personal credibility of defense counsel. *People v Kennebrew*, 220 Mich App 601, 607; 560 NW2d 354 (1996).

First, viewing the prosecutor's initial statement in isolation, it may appear that he was asserting that defense counsel was attempting to sell the jury on a bunch of "hocus pocus." However, in context, the statement does not denigrate the defense. The statement was directed at the jury instructions for assault with intent to do great bodily harm less than murder. Even defense counsel interpreted the comments as being about the jury instructions and not about defense counsel's theory of the case. Second, and significantly, the prosecutor essentially withdrew his use of the phrase "hocus pocus" in his rebuttal argument. Third, defendant cannot prevail on this issue because a timely objection and cautionary instruction could have cured any possible prejudice from the prosecutor's comments. In fact, the trial court instructed the jury that it "must take the law as I give it to you," that the jury was to "take all of [the judge's] instructions together as the law that you are to follow," and that "[i]f a lawyer said something different about the law, follow what I say," presumably curing any prejudice arising from the comments. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors."). Under all the circumstances, there was no due process violation.[2]

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that her trial counsel was ineffective for failing to object to the prosecutor's statements. We disagree.

---

[2] We find no basis for reversal, given the specific circumstances, but we caution the prosecutor to avoid using potentially inflammatory phrases.

The determination regarding whether there has been a deprivation of the effective assistance of counsel is a mixed question of law and fact; the factual findings are reviewed for clear error and the matters of law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In this case, there are no factual findings on defendant's claims of ineffective assistance of counsel. Thus, this Court's review is limited to mistakes apparent on the record. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002).

Effective assistance of counsel is presumed and a defendant claiming ineffective assistance is required to overcome a strong presumption that sound trial strategy motivated counsel's conduct. *LeBlanc*, 465 Mich at 578. To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005); *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Rather than objecting, defense counsel repeated the prosecutor's use of the phrase "hocus pocus" and provided a counter to the prosecutor's characterization of the instructions. Defendant cannot show that counsel's choice of dealing with the comment in this manner, rather than objecting, was anything other than sound trial strategy. Moreover, given that any prejudicial effect from the closing was cured by the trial court's instructions and by the prosecutor's withdrawal of the phrase, defendant cannot establish that the outcome of the proceedings would have been different had her counsel objected to the prosecutor's allegedly improper statements. *Mack*, 265 Mich App at 129. Therefore, defendant's claim of ineffective assistance of counsel must fail.

## VI. SENTENCING

In *People v Lockridge*, 498 Mich 358, 395-398; ___ NW2d ___ (2015), the Court held that in cases with judicial fact-finding that changed the sentencing guidelines range, that did not involve an upward departure, and that involved a sentence imposed on or before July 29, 2015, a defendant is entitled to a remand to the trial court for further proceedings regarding sentencing. Here, defendant alleges that judicial fact-finding occurred. We agree.

Defendant was assessed 10 points for offense variable (OV) 4. OV 4 covers "psychological injury to a victim," and 10 points is appropriate if there is evidence that a "serious psychological injury" that "may require professional treatment" occurred to a victim. MCL 777.34. The jury found defendant guilty of assault with intent to murder, which did not require the jury to find that defendant caused a psychological injury to any victim. Thus, the facts necessary to support a 10-point score for OV 4 were not found by the jury beyond a reasonable doubt.

Defendant was assessed 50 points for OV 6. OV 6 covers intent to kill or injure, and 50 points is appropriate if the "offender had premeditated intent to kill . . . ." MCL 777.36. "To premeditate is to think about beforehand . . . ." *People v Furman*, 158 Mich App 302, 308, 404 NW2d 246 (1987). Again, the jury found defendant guilty of assault with intent to murder, which did not require the jury to find that defendant had a *premeditated* intent to kill. Thus, the

facts necessary to support a 50-point score for OV 6 were not found by the jury beyond a reasonable doubt.[3]

Defendant was assessed 10 points for OV 9, which covers "number of victims;" 10 points are appropriate if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39. Zero points are to be assessed if there were fewer than two victims. MCL 777.39(1)(d). Again, the jury found defendant guilty of assault with intent to murder, which did not require the jury to find that there were more than two victims who were placed in danger of physical injury or death. The jury's decision only required it to find that the victim of the assault with intent to murder was placed in danger of physical injury or death. Thus, the facts necessary to support a 10-point score for OV 4 were not found by the jury beyond a reasonable doubt.

The OV scoring errors affected the guidelines range and we remand this case for further proceedings in accordance with *Lockridge*.

Defendant's conviction is affirmed but this case is remanded for further proceedings regarding sentencing. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly

---

[3] However, a score of 25 points is appropriate for OV 6 if the "offender had an unpremeditated intent to kill . . . ." MCL 777.36(1)(b). Here, the jury's decision required it to find that defendant had the intent to kill. Thus, we note that the facts necessary to support a 25-point score for OV 6 were necessarily found by the jury beyond a reasonable doubt.