# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

GHERMELL JAQUES BOLDEN-JAPRICE,

   Defendant-Appellant.

UNPUBLISHED
November 22, 2016

No. 328281
Calhoun Circuit Court
LC No. 2014-002705-FC

Before: BECKERING, P.J., and HOEKSTRA and OWENS, JJ.

PER CURIAM.

Defendant, Ghermell Jaques Bolden-Japrice, appeals as of right his jury trial convictions of armed robbery, MCL 750.529, and first-degree home invasion, MCL 750.110a(2).[1] The trial court sentenced him to 225 months to 30 years' imprisonment for the armed robbery conviction, and to 95 months to 20 years' imprisonment for the home invasion conviction, with the sentences to be served consecutively. We affirm defendant's convictions but remand for a *Crosby*[2] proceeding pursuant to *People v. Lockridge,* 498 Mich 358; 870 NW2d 502 (2015).

This case arises out of a nighttime robbery at the home of the victim, Allyn Reeve, which resulted in Reeve being fatally shot in the chest. At the time of the robbery, Reeve lived with Bradley Launder, who grew medicinal marijuana in the basement of the house. Defendant was implicated in the robbery, along with Christopher Leon Felton, who was convicted of first-degree felony murder and first-degree home invasion in a separate jury trial and whose appeal is pending before this Court.[3]

On appeal, defendant claims that the lead detective, Detective Jeffrey Coons, "effectively vouched" for two critical witnesses, Katie Bond and Ashley VanVleet, by affirming that their prior statements to police had been consistent. Because defendant did not object to the testimony

---

[1] Defendant was also charged with first-degree felony murder, but the jury acquitted him of that offense.

[2] *United States v Crosby*, 397 F3d 103 (CA 2 2005).

[3] Docket No. 328280.

-1-

at issue, we review defendant's unpreserved evidentiary claim for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). This prohibition typically extends to third-party testimony that a witness's in-court testimony was consistent with the witness's earlier statements. *People v Washington*, 100 Mich App 628, 633; 300 NW2d 347 (1980) (finding inadmissible a police officer's testimony that an eyewitness's trial testimony was "for the most part" the same as the witness's prior statements because the witness had not been accused of recently fabricating her account).

However, under certain circumstances, a prior consistent statement may be admitted through the testimony of a third party. See *People v Jones*, 240 Mich App 704, 706; 613 NW2d 411 (2000). For example, MRE 801(d)(1)(B) provides that a statement is not hearsay if the declarant testifies and is subject to cross-examination about a prior statement and the statement "is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." Additionally, when a defendant introduces portions of a prior inconsistent statement to impeach witness credibility, the prosecution may explore the extent of inconsistencies by showing how the statement was consistent with the witness' trial testimony. *People v Sayles*, 200 Mich App 594, 595; 504 NW2d 738 (1993).

Defendant indicated in his opening statement that this case involved witnesses who were mistaken, lying, or not credible. Among the prosecution's witnesses were Bond, VanVleet, and Detective Coons. Bond and VanVleet testified to their observations of defendant and his cohort planning the robbery beforehand, with Bond witnessing defendant and his cohort running from the scene after the shooting. Detective Coons testified that he had interviewed Bond on the date of the incident and "multiple times" thereafter when "delivering subpoenas and such." The prosecution asked Detective Coons whether, ". . . throughout the testimony of Ms. Bond has she been consistent?" Detective Coons responded, "Yes." Defendant takes issue with this exchange, contending that it constituted an impermissible attempt to vouch for the credibility of the witness. We disagree.

By the time Detective Coons testified, defendant had thoroughly impeached Bond using prior statements made in interviews with police and her preliminary examination testimony. He had also questioned her rather extensively about her ongoing Children's Protective Services case, implying that she was improperly influenced or motivated to testify in this matter so that she would be viewed favorably in that case. Moreover, defendant cross-examined Bond regarding alleged inconsistencies in her preliminary examination testimony, eliciting from Bond testimony that she "stuck with the same [testimony]" and that her trial testimony did not differ from her interview statements. Thus, because defendant introduced Bond's alleged prior inconsistencies to impeach her credibility, the prosecution was able to explore the extent of these alleged inconsistencies. See *Sayles*, 200 Mich App at 595. Accordingly, defendant has shown no plain error with respect to the admission of Detective Coons's testimony regarding Bond's prior consistent statements. *Carines*, 460 Mich at 763.

With regard to VanVleet, defendant implied at trial and through his questioning of VanVleet that she was not credible because of her heroin use and addiction. Upon questioning by the prosecution, Detective Coons testified that he had interviewed VanVleet on the day of the incident, "probably once or twice delivering subpoenas," and that "[o]nce in a while during the year" he had gotten "a phone call from somebody about something in reference to the case, but that was it." The prosecutor asked if VanVleet has been consistent throughout, and Detective Coons responded, "Yes." Defendant argues that this exchange was also inadmissible.

Upon review of the record, we conclude that this testimony was not admissible under MRE 801(d)(1)(B) because VanVleet's statements to Detective Coons came at a time after the purported improper influence or motive to fabricate. *Jones*, 240 Mich App at 707 ("the prior consistent statement must be made prior to the time that the supposed motive to falsify arose") (quotation marks and citation omitted). VanVleet testified that she used heroin on the morning before the robbery and before she had any contact with Detective Coons. Therefore, to the extent Detective Coons's testimony was intended to rebut a charge of recent fabrication or recent improper influence or motive to testify stemming from her heroin use, admission of the testimony regarding VanVleet's prior consistent statements was in error. *Carines*, 460 Mich at 763. Nevertheless, in light of the evidence presented and the jury instructions given, the testimony did not affect defendant's substantial rights, as it did not affect the outcome of the proceedings. See *People v Jones*, 468 Mich 345, 356; 662 NW2d 376 (2003) ("To establish that a plain error affected substantial rights, there must be a showing of prejudice, i.e. that the error affected the outcome of the lower-court proceedings").

Defense witness Shawn Pike testified that defendant was present and awake at VanVleet's house when he, Pike, went to sleep at 1:00 a.m. on June 17, 2014, which contradicted defendant's statement to Detective Coons that he left VanVleet's house at 10:30 p.m. on June 16, 2014. Pike also indicated that defendant discussed robbing the house across the street during the weeks leading up to the robbery, which corroborated Bond's and VanVleet's testimony that defendant discussed multiple times robbing the house with the medical marijuana plants growing in the basement. Bond and VanVleet corroborated each other's account of the night at issue with testimony indicating that, on the night of the robbery, defendant discussed robbing the house during a conversation at the dining room table, both defendant and "L" asked for T-shirts, and both men left VanVleet's house after obtaining the T-shirts. VanVleet testified that she gave defendant and "L" a pair of white and pink polka dot socks, which Jamie Moffitt, the surviving victim, corroborated with testimony that the cloth wrapped around the gunman's hand holding the gun was white or pink in color. Moffitt also testified that the gunman demanded marijuana from the victim during the robbery, which corroborates the testimony that defendant and "L" discussed going across the street to steal the marijuana. Bond testified that she observed defendant running from the house following hearing the gunshots. Moreover, the jury was instructed multiple times that the task of determining witness credibility was solely the duty of the jury. "[J]urors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Thus, in light of the admissible evidence presented to the jury, and considering the trial court's instructions, defendant has not shown that the admission of Detective Coons's testimony regarding VanVleet's prior statements affected his substantial rights. *Carines*, 460 Mich at 763.

Defendant asserts briefly on appeal that the prosecutor placed the prestige of her office and the office of the police behind the contention that defendant was guilty, and that he was denied a fair trial. However, defendant fails to brief either issue adequately. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."). With respect to his claim that he was denied a fair trial, the law defendant cites is inapplicable, and he fails to apply the facts of this case to his cursory argument. Although both of these arguments are effectively abandoned, see *id.*, we reviewed them nevertheless and found them to be without merit.

Likewise, because defendant raises but gives cursory treatment to an ineffective assistance of counsel claim, we deem the claim abandoned. *Id.* Nevertheless, from our review of the trial court record, we conclude that defense counsel did not render ineffective assistance by failing to object to the statements of Detective Coons at issue. In order to establish a claim of constitutionally ineffective assistance, defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Because the admission of Detective Coons's testimony regarding Bond's prior consistent statements was not plain error, defendant cannot show that his trial counsel's failure to object to the detective's testimony fell below an objective standard of reasonableness. *Id.* Assuming arguendo that defense counsel's failure to object to the detective's inadmissible testimony regarding VanVleet's prior consistent statements did fall below an objective standard of reasonableness, for the reasons stated above, there is no reasonable probability that the outcome would have been different had trial counsel objected. *Id.*

In a Standard 4 brief,[4] defendant challenges his sentence on Sixth Amendment grounds and asserts that the remedy set forth in *Lockridge* is insufficient to cure the Sixth Amendment violation. Defendant's counsel also filed a supplemental brief seeking a remand in light of *Lockridge*. We agree that a remand is necessary under *Lockridge*, but find that defendant's claim of entitlement to a remedy different than the one set forth in *Lockridge* lacks merit.

In *Lockridge,* 498 Mich at 364, our Supreme Court concluded that Michigan's sentencing guidelines were constitutionally deficient to the extent that judicial fact-finding could be used to mandatorily increase a defendant's guidelines minimum sentence range. As a result, the Court severed MCL 769.34(2)[5] to the extent that it was mandatory and struck down the requirement

---

[4] A "Standard 4" brief refers to a brief filed on behalf of an indigent criminal defendant pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4.

[5] The relevant statutory language states the following:

> Except as otherwise provided in this subsection or for a departure from the appropriate minimum sentence range provided for under subsection (3), the minimum sentence imposed by a court of this state for a felony enumerated in part 2 of chapter XVII committed on or after January 1, 1999 shall be within the

that courts must articulate substantial and compelling reasons to depart from the guidelines. *Id.* at 391. The *Lockridge* Court concluded that a remand to the trial court is appropriate for "all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure." *Id.* at 395. In such cases, the procedure outlined in *Crosby,* 397 F3d 103, must be followed to determine whether the sentencing court "would have imposed a materially different sentence but for the constitutional error." *Id.* at 397.

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the "circumstances existing at the time of the original sentence. [*Id.* at 398-399, citations and quotation marks omitted).]

In this case, without judicially found facts supporting the scoring of the OV points, namely offense variable (OV) 3, defendant's sentencing cell would differ from the one under which he was sentenced. Thus, we remand to the trial court for a *Crosby* proceeding.

Defendant raises what appears to be various claims regarding the Ex Post Facto Clause. To the extent defendant asserts that the remedy outlined in *Lockridge* is not the proper or a sufficient remedy for Sixth Amendment violations based on judicial fact-finding, pursuant to stare decisis, this Court is required to follow the decisions of our Supreme Court. *People v Hall*, 249 Mich App 262, 270; 643 NW2d 253 (2002). Therefore, the appropriate remedy for defendant is the one set forth in *Lockridge*, 498 Mich at 391, and defendant fails to support his argument that any other remedy applies.

We affirm defendant's convictions, but remand the case for a *Crosby* proceeding. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Joel P. Hoekstra
/s/ Donald S. Owens

---

appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed.