# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 17, 2017

Plaintiff-Appellee,

v

No. 329185
Wayne Circuit Court
LC No. 15-002317-FC

GENERAL FLETCHER JONES,

Defendant-Appellant.

Before: RIORDAN, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of assault with intent to do great bodily harm less than murder ("AWIGBH"), MCL 750.84, assault with a dangerous weapon ("felonious assault"), MCL 750.82, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant to 4 to 10 years' imprisonment for his AWIGBH conviction, two to four years' imprisonment for his felonious assault conviction, and a consecutive two-year term of imprisonment for his felony-firearm conviction. We affirm defendant's convictions, but remand for resentencing.

## I. FACTUAL BACKGROUND

This case arises out of a shooting in Inkster, Michigan, on December 13, 2015. At trial, Walter Whitner testified that he drove his work van to the parking lot of a strip mall just after dark in order to pay an employee that worked for him. While Whitner was meeting with the employee, defendant called and asked where Whitner was. Whitner answered that he was in Inkster. Defendant said something along the lines that he was nearby and coming to meet Whitner, but he hung up before Whitner could ask what he wanted.[1]

---

[1] When asked at trial why defendant would call him, Whitner thought it was because he had spoken with defendant a few weeks earlier about the possibility of purchasing electronics that defendant had for sale. However, defendant's brother, Jason Oliver, testified that he had talked to Whitner earlier that day, and the plan was for defendant to meet up with Whitner and sell "lean" to him.

-1-

After Whitner finished his business with the employee in the parking lot, Whitner walked back to the work van and noticed that defendant and another individual were walking toward the van. After Whitner reentered his van, defendant walked up and entered the van's rear passenger-side door, sitting on a glue bucket located in the middle of the van behind the two front seats. At the time, Whitner's friend, Reginald Thomas, was asleep in the front passenger seat.[2] Whitner asked defendant what was going on, and defendant responded by asking if he could get a ride to John Daly. Whitner said that he could give defendant a ride and asked where defendant's friend went. Defendant replied that his friend went inside the Family Dollar located in the strip mall. Whitner told defendant, "All right. Well, I'm about to grab a pop." As Whitner stepped out of the van, defendant said, "Hold on. Hold on." When Whitner looked back, defendant pulled out a handgun and pointed it at Thomas, saying, "Give me everything." Whitner then ran to the back of the van, at which time defendant began firing gunshots. When Whitner reached the rear of the van, he pulled out his own handgun.

Within a few seconds, Whitner's glasses fell off, and he ran to large donation bins in the parking lot to take cover. He could hear bullets hitting the ground around him as he dove behind the bins. Meanwhile, Thomas drove Whitner's work van out of the parking lot. After the van was gone, Whitner retraced his steps, found his glasses, and ran to a Metro PCS store in the strip mall for help. He did not realize until he was inside the store that one of the bullets had struck him in the foot.[3]

Later, Sergeant Bradley Cox interviewed Whitner, inspected his foot, and inspected the van for evidence at the impound lot. Cox recovered four 9 mm bullet casings, a prescription receipt for a codeine-based cough syrup, and a baby bottle, which is commonly used to consume cough syrup. Cox also learned that a white minivan that had been parked next to Whitner's work van had been shot during the incident.

Defendant did not testify at trial, but the parties stipulated to the admission of Cox's interview with defendant. During the interview, defendant explained that he had been meeting with Whitner for five or six months to buy and sell "lean," a codeine-based cough syrup. Defendant said that he carried his gun because he knew Whitner carried a gun. Defendant recounted the events that transpired on December 13, 2014, explaining that he met Whitner to sell him lean, but Whitner was not satisfied when he inspected the cough syrup. After Whitner expressed his dissatisfaction with defendant, Whitner stepped out of the van. Defendant told Cox that he believed, at that time, that Whitner was going to pull out his gun and shoot him. Accordingly, defendant pulled out his gun first and began firing to protect himself. Defendant said that he kept shooting when he saw Whitner peek his head around the back of the van and when he saw that Whitner had a gun in his hand after defendant had exited the vehicle. Defendant then left the scene and called his brother.

---

[2] The prosecution was unable to locate Thomas, and he did not testify at the preliminary examination or bench trial.

[3] A surveillance video admitted at trial corroborated much of Whitner's testimony.

At the end of the trial, the court determined that there was insufficient evidence to find that defendant had committed armed robbery or that he had the specific intent to murder required for assault with intent to commit murder. In determining whether defendant was guilty of AWIGBH, the trial court first considered defendant's claim that he acted in self-defense. The trial court concluded that even if defendant had an honest and reasonable belief that justified deadly force, defendant was no longer acting in self-defense when he continued to fire shots as Whitner ran away. For that reason, the trial court concluded that defendant was guilty of AWIGBH. The trial court also determined that the prosecution had established the elements of felonious assault. Finally, the trial court concluded that defendant was also guilty of felony-firearm given the fact that he had committed AWIGBH and felonious assault "while possessing and using a gun."

## II. INCONSISTENT VERDICTS

Defendant first argues that the trial court rendered inconsistent verdicts when it found defendant guilty of both AWIGBH and felonious assault. We disagree.

## A. STANDARD OF REVIEW

Because defendant failed to raise this issue in the trial court, it is unpreserved, see *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011), and reviewed for plain error affecting his substantial rights, *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999). To demonstrate plain error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original).

## B. ANALYSIS

Although juries may render inconsistent or illogical verdicts, " 'a trial judge sitting as the trier of fact may *not* enter an inconsistent verdict.' " *People v Ellis*, 468 Mich 25, 26; 658 NW2d 142 (2003), quoting *People v Walker*, 461 Mich 908; 603 NW2d 784 (1999). See also *People v Vaughn*, 409 Mich 463, 465-466; 295 NW2d 354 (1980) (explaining that juries may render inconsistent verdicts, but "[t]hese considerations change when a case is tried by a judge sitting without a jury"). An inconsistent verdict occurs when a trial court's factual findings are inconsistent with the verdict and the verdict "cannot be rationally reconciled" with the factual findings. *Id*. at 27. Accordingly, reversal is warranted if there is a factual inconsistency between the trial court's findings and its verdict. See *People v Smith*, 231 Mich App 50, 53; 585 NW2d 755 (1998); *People v Williams*, 99 Mich App 463, 463-465; 297 NW2d 702 (1980).

Defendant argues that his felonious assault conviction is factually inconsistent with his AWIGBH conviction. It is defendant's position that a defendant cannot be convicted of felonious assault pursuant to MCL 750.82 when there is a factual finding that the defendant

intended to cause great bodily harm, as the felonious assault statute states, in pertinent part, that "a person who assaults another person with a gun . . . *without intending to commit murder or to inflict great bodily harm less than murder* is guilty of a felony . . . ." MCL 750.82(1) (emphasis added). Stated differently, defendant argues that the verdicts were inconsistent because the trial court concluded that defendant assaulted Whitner with the intent to cause great bodily harm and, therefore, a conviction of felonious assault against Whitner for the same offense is inconsistent because a felonious assault conviction requires the assault to occur *without* the intent to inflict great bodily harm or to commit murder. We reject defendant's claim.

The Michigan Supreme Court considered a similar issue in *People v Doss*, 406 Mich 90, 96-97; 276 NW2d 9 (1979), where the defendant argued, and this Court agreed, "that the absence of malice is an essential element of manslaughter" under MCL 750.329. At that time, the manslaughter statute provided, " 'Any person who shall wound, maim or injure any other person by the discharge of any firearm, pointed or aimed, intentionally but *without malice*, at any such person, shall, if death ensue from such wounding, maiming or injury, be deemed guilty of the crime of manslaughter." *Doss*, 406 Mich at 97, quoting MCL 750.329 (emphasis added).[4] The Supreme Court disagreed with the defendant and this Court, explaining:

> In the instant case, "without malice" is the absence of an element, rather than an additional element which the people must prove beyond a reasonable doubt. Malice or "malice aforethought" is that quality which distinguishes murder from manslaughter and is defined . . . as "the intention to kill, actual or implied, under circumstances which do not constitute excuse or justification or mitigate the degree of the offense to manslaughter". [sic] While the absence of malice is fundamental to manslaughter in a general definitional sense, it is not an actual element of the crime itself which the people must establish beyond a reasonable doubt. [*Doss*, 406 Mich at 99 (citation omitted).]

Here, as in *Doss*, the phrase "without the intent to murder or to inflict great bodily harm" is "the absence of an element," and it is not one that the prosecution was required to prove beyond a reasonable doubt. See *id*. An intent to inflict great bodily harm distinguishes AWIGBH from felonious assault, but it does not prevent the trial court from convicting defendant of both offenses.

Accordingly, defendant's argument that he cannot be convicted of both offenses because of an inherent contradiction between the offenses' elements is unavailing. The trial court found that defendant had the intent to inflict great bodily harm. Additionally, the trial court determined that defendant's conduct met the elements of felonious assault, specifically that defendant committed an assault with the intent to injure Whitner by firing a dangerous weapon at him (the same act underlying defendant's AWIGBH conviction). See *People v Nix*, 301 Mich App 195,

---

[4] While the manslaughter statute, MCL 750.329, has been amended, it remains essentially intact. Currently, MCL 750.329(1) provides: "A person who wounds, maims, or injures another person by discharging a firearm that is pointed or aimed intentionally but without malice at another person is guilty of manslaughter if the wounds, maiming, or injuries result in death."

205; 836 NW2d 224 (2013) (stating the elements of felonious assault). Therefore, defendant's convictions were entirely consistent. Moreover, we find it noteworthy that the Michigan Supreme Court has specifically upheld both convictions with regard to the same offenses, concluding that a defendant's double jeopardy protections were not violated when he was convicted of both AWIGBH and felonious assault. *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007).[5]

Thus, because the verdicts were consistent, defendant has failed to demonstrate a plain error affecting his substantial rights. See *Carines*, 460 Mich at 763-764.

### III. DOUBLE JEOPARDY

Defendant next argues that his AWIGBH and felonious assault convictions violate double jeopardy principles. We disagree.

### A. STANDARD OF REVIEW

Because defendant also failed to preserve his double jeopardy challenge, see *People v Strickland*, 293 Mich App 393, 401; 810 NW2d 660 (2011), our review of this unpreserved constitutional challenge is limited to plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 752-753, 763-764.

### B. ANALYSIS

Both the United States and Michigan Constitutions prohibit placing a defendant twice in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15; *Blueford v Arkansas*, ___ US ___; 132 S Ct 2044, 2050; 182 L Ed 2d 937 (2012); *People v Ream*, 481 Mich 223, 227; 750 NW2d 536 (2008). "The Double Jeopardy Clause affords individuals three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007) (quotation marks and citation omitted). At issue here is the third strand of protection: preventing multiple punishments for the same offense.

As previously mentioned, in *Strawther*, 480 Mich 900, the Michigan Supreme Court expressly rejected this Court's previous conclusion that a "defendant's convictions for both assault with intent to commit great bodily harm (MCL 750.84) and felonious assault (MCL 750.82) violated his double jeopardy protections." The Court explained, "Because the crimes

---

[5] A Supreme Court order is binding if it is "a final Supreme Court disposition of an application, and the order contains a concise statement of the applicable facts and the reason for the decision. Const 1963, art 6, § 6." *People v Crall*, 444 Mich 463, 465; 510 NW2d 182 (1993). See also *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012) (stating same).

have different elements, the defendant may be punished for each." *Id*., citing *Smith*, 478 Mich 292.[6]

More recently, in *People v Strickland*, 293 Mich App 393, 401-402; 810 NW2d 660 (2011), this Court reiterated the Supreme Court's previous conclusion:

> The validity of multiple punishments under the double jeopardy provisions of the United States and Michigan Constitutions is generally determined under the "same-elements test," which requires the reviewing court to determine " 'whether each provision requires proof of a fact which the other does not.' " [*People v Smith*, 478 Mich 292, 305, 315-316; 733 NW2d 351 (2007), quoting *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932).] Our Supreme Court has determined that convictions of both assault with intent to do great bodily harm less than murder and felonious assault do not violate the constitutional double jeopardy protections because the two crimes have different elements. [*People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007).] This Court is bound to follow decisions of our Supreme Court. [*People v Hall*, 249 Mich App 262, 270; 643 NW2d 253 (2002).] Accordingly, Strickland has failed to demonstrate error.

Therefore, under *Strawther* and *Strickland*, defendant's AWIGBH and felonious assault convictions did not violate double jeopardy protections. Thus, we affirm his convictions and reject his claim that he is entitled to resentencing based on the number of points assessed for PRV 7.[7]

## IV. OFFENSE VARIABLE SCORING

---

[6] In *Smith*, 478 Mich at 316, the Court concluded:

> Where the Legislature has not clearly expressed its intention to authorize multiple punishments, federal courts apply the "same elements" test of *Blockburger*[ *v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932),] to determine whether multiple punishments are permitted. Accordingly, we conclude that the "same elements" test set forth in *Blockburger* best gives effect to the intentions of the ratifiers of our constitution.

[7] Defendant argues that because the Legislature's intent is clear, a *Blockburger* analysis is unnecessary. See *People v Garland*, 286 Mich App 1, 4-5; 777 NW2d 732 (2009). According to defendant, no court has completed the preliminary step of determining whether the Legislature intended, through the plain language of the felonious assault statute, to prevent a criminal defendant from being convicted of both felonious assault and AWIGBH. Because we must follow Michigan Supreme Court decisions, *Strickland*, 293 Mich App at 402, and published opinions issued by this Court, MCR 7.215(C)(2), (J)(1)—and we find no basis for coming to a contrary conclusion, cf. MCR 7.215(J)(2)—we reject defendant's claims and need not consider this issue further.

Lastly, defendant argues that this case should be remanded to give the trial court an opportunity to determine whether OV 4, MCL 777.34, was properly scored. The prosecution agrees. We conclude that this case should be remanded for resentencing because an assessment of 10 points for OV 4 was not supported by a preponderance of the evidence in the record.

## A. STANDARD OF REVIEW

Defendant preserved these challenges by filing a motion to remand in this Court. See MCL 769.34(10); *People v McChester*, 310 Mich App 354, 357; 873 NW2d 646 (2015).

> [T]he circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnotes omitted).]

## B. ANALYSIS

OV 4 pertains to "psychological injury to a victim." MCL 777.34(1). The trial court shall assess 10 points for OV 4 when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). "The fact that the victim did not seek professional treatment is not conclusive when scoring the variable," and an assessment of 10 points is appropriate when there is "some evidence of psychological injury on the record to justify a 10-point score." *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). In scoring the sentencing guidelines, courts may consider the entire record, including the presentence investigation report ("PSIR"), a defendant's admissions at a plea proceeding or at trial, and evidence introduced during the preliminary examination or the trial. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). Courts also may consider the victim's impact statement, a victim's statements at sentencing, or a victim's correspondence with the trial court. See *People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014). "[If] a defendant has effectively challenged an adverse factual assertion contained in the presentence report or any other controverted issues of fact relevant to the sentencing decision, the prosecution must prove by a preponderance of the evidence that the facts are as asserted." *Johnson*, 298 Mich App at 131 (quotation marks and citation omitted; alteration in original).

After reviewing the entire record, we agree that there is insufficient evidence to support a finding of psychological injury by a preponderance of evidence. See *Hardy*, 494 Mich at 438. The only reference to any psychological injury is in the victim impact statement in the PSIR, which (1) briefly mentions that "Mr. Whitner states he was injured both physically as well as psychologically," and (2) further explains that "[Mr. Whitner] states he lost his job for taking off after he was injured, which caused him psychological injuries." When read in context, Whitner's impact statement appears to indicate that it was the loss of his job that caused psychological injuries rather than defendant's offenses against him. Further, Whitner repeatedly testified at trial that he owned his own carpet business with locations in two cities, and that he hired and paid "carpet helpers" and "carpet installers" as the owner of this business. Notably, Whitner testified that the reason why he was at the parking lot when the offense occurred was to pay one

of his employees. This clear and recurring testimony regarding Whitner's business wholly undermines the statement in the PSIR that he "lost his job" for taking time off work.

There is no other testimony or evidence in the record to support a finding of serious psychological injury. Whitner did not attend defendant's sentencing and never testified regarding his claim that he suffered psychological injury. Although he testified at length during the trial, he never mentioned that he experienced psychological injury as a result of defendant's actions. Moreover, it is noteworthy that Whitner testified that he did not realize that he was shot until he got into the store and inspected his foot. According to Whitner, he was concerned that the bullet was still in his foot only because he is diabetic, explaining that "it didn't hurt that much" and only later "started to hurt a little bit more." On this record, we cannot conclude that the statements in the PSIR alone constitute a preponderance of evidence that Whitner experienced "serious psychological injury requiring professional treatment." MCL 777.34(1). See also *Hardy*, 494 Mich at 438.

Without the 10 points assessed for OV 4, defendant's OV score would have been 40 points instead of 50 points. This point reduction places him in OV Level IV instead of OV Level V and changes the minimum range calculated under the sentencing guidelines from 29 to 57 months to 19 to 38 months. See MCL 777.65. Because the scoring error altered the minimum range calculated under the sentencing guidelines, defendant is entitled to resentencing. See *People v Francisco*, 474 Mich 82, 89-91, 91 n 8; 711 NW2d 44 (2006).

Thus, we vacate defendant's sentences and remand this case to the trial court for resentencing. On remand, the trial court may hear additional testimony relevant to its scoring of OV 4.

## V. CONCLUSION

Defendant has failed to demonstrate that he is entitled to reversal of his convictions. However, the trial court's improper scoring of OV 4 requires resentencing.

We affirm defendant's convictions, vacate his sentences, and remand for resentencing. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto

-8-