# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT TERRAIL WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2017

No. 333904
Calhoun Circuit Court
LC No. 2016-000124-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RICHARD CHARLES YOUNG,

        Defendant-Appellant.

No. 334113
Calhoun Circuit Court
LC No. 2016-000118-FC

Before: O'CONNELL, P.J., and MURPHY and K. F. KELLY, JJ.

PER CURIAM.

In Docket No. 333904, a jury convicted defendant, Robert Terrail Williams (Williams) of three counts of armed robbery, a violation of MCL 750.529, one count of assault with intent to murder (AWIM), a violation of MCL 750.83, and felony-firearm, a violation of MCL 750.227b. Williams was sentenced as a fourth habitual offender, MCL 769.12, to three terms of 45 to 75 years' imprisonment for each of the armed robbery convictions, 60 to 90 years' imprisonment for the AWIM conviction, and two years' imprisonment for the felony-firearm conviction.

In Docket No. 334113, a jury found defendant, Richard Charles Young (Young), guilty of three counts of armed robbery. He was sentenced to 20 to 40 years' imprisonment.

Both defendants now appeal as of right. Finding no errors warranting relief, we affirm defendants' convictions and sentences.

## I. BASIC FACTS

-1-

On November 21, 2015 at approximately 11:30 a.m., a man walked into the PNC Bank at 2521 Capital Avenue Southwest in Battle Creek and robbed three tellers. He entered a car with two other individuals and fired numerous shots at officers who responded to the robbery. The prosecution's theory of the case was that Williams was the perpetrator and was aided and abetted by Young and their friend, Whitney Hampton (Hampton). Hampton was the driver and Young was the front seat passenger. Hampton provided accomplice testimony at defendants' joint trial.

## II. DOCKET NO. 333904

## A. GREAT WEIGHT OF THE EVIDENCE

Williams argues that there was no credible evidence to support the jury's verdict and allowing the verdict to stand would be a miscarriage of justice. Williams concedes that counsel did not move for a new trial and, consequently, the issue is viewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 761-767; 597 NW2d 130 (1999).

A new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result. MCR 2.611(A)(1)(e); *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). Issues involving matters of credibility or circumstantial evidence are ordinarily left for the trier of fact. *Lemmon*, 456 Mich at 642-643.

Williams was convicted of several counts of armed robbery, as well as AWIM. As it relates to his armed robbery conviction:

> [A] prosecutor must . . . prove, in order to establish the elements of armed robbery, that (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007) (citation omitted).]

Here, Williams does not dispute that a robbery occurred; instead, he argues that Hampton was the actual perpetrator. "The duty of the prosecutor to identify the accused is an element of his general duty to prove defendant's guilt beyond a reasonable doubt." *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216, 218 (1967). However, the evidence at trial belies Williams's argument. In fact, there was never any real issue that Williams was the robber.

Jimmy John's driver, Dylan Rank, specifically noted that the robber was "a gentleman." The first teller, Lauren Marcinek, testified that the robber was a man. The second teller, Sylvia King, identified the robber as a male and subsequently identified Williams during a line up. The third teller, Susie Waterman, testified that she knew the robber was a man because of his voice. Bank customer Brenda Dutton testified that she witnessed "a gentleman" rob the bank. Another customer, Virginia Hawkins, testified that the robber was a man with filthy fingernails. Moreover, the jury had an opportunity to view the surveillance footage.

-2-

Williams argues that the testimony was called into question when both Brenda Dutton and Susie Waterman approached the prosecutor with "concerns" following Hampton's testimony. Those witnesses testified that, although they had some concerns, their testimony did not change. These statements were far from recantations. Not only did all of the witnesses agree that the robber was male, but the jury had the luxury of viewing the bank surveillance video and making its own independent determination. Moreover, there is no dispute that it was snowing out at the time of the robbery, which provides some explanation for why the perpetrator had "white on his shoes." The evidence did not preponderate heavily against the jury's armed robbery verdict.

As for Williams's AWIM conviction, "[t]he elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). Because of the difficulty of proving an actor's state of mind, the intent to kill may be proved by inference from any facts in evidence. *Id*. Williams fired multiple shots at a police officer's vehicle. The jury could safely conclude that an assault occurred and that Williams had the intent to kill. The evidence did not preponderate heavily against the jury's AWIM verdict.

## B. SENTENCE PROPORTIONALITY

Williams argues that his sentence was disproportionate to the crime. Appellate review of a sentence imposed under the guidelines is limited to determining whether the sentence was reasonable. *People v Lockridge*, 498 Mich 358, 365, 392; 870 NW2d 502 (2015); *People v Steanhouse*, ___ Mich ___, ___; ___ NW2d ___ (2017) (Docket Nos. 152671, 152849, 152871, 152872, 152873, 152946, 152947, 152948); slip op p 4-5, 14.

At sentencing, defense counsel asked that Williams be sentenced "toward the bottom of the guidelines." A court must score and consider the sentencing guidelines when determining a reasonable sentence, but it is not bound by them. *Lockridge*, 498 Mich at 365, 391-392. A reasonable sentence is one that is proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Steanhouse*, ___ Mich at ___, slip op pp 3, 17, citing *People v Milbourn*, 435 Mich 630, 634-636; 461 NW2d 1 (1990). The key test of a reasonable sentence is whether it is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range. *Milbourn*, 435 Mich at 661; *Steanhouse*, ___ Mich at ___, slip op pp 15, 18. Non-exclusive factors that may be considered by the court include (1) the seriousness of the offense, (2) factors not considered by the sentencing guidelines, and (3) factors that were inadequately considered by the sentencing guidelines. *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015), aff'd in part and rev'd in part ___ Mich ___; ___ NW2d ___ (2017).

The trial court made the following observations before imposing sentence on Williams, revealing its thoughtful consideration of the facts and circumstances:

> THE COURT: Very good, Mr. Williams. I've reviewed the guidelines in this case. I believe that they are accurately scored as corrected. I also think that they do reflect the seriousness of this case.

-3-

There are a number of factors that I take into consideration when imposing your sentence, Mr. Williams. Some of these are factors that I take into consideration in every case.

I take into consideration your criminal history. I note that you have a significant criminal history but you don't have a significant history of violence. You do have gun offenses, a number of gun offenses . . .

MR. WILLIAMS: One.

THE COURT: . . . and a number of drug offenses. I note that you were released from parole . . .

MR. WILLIAMS: One.

THE COURT: . . . just shortly before this offense was committed.

I take into consideration in this case a number of other factors. I understand that you were shot by Officer Roth and that you will live with the scars from that for the rest of your life, but there are scars that go beyond the physical.

In this case, the number of persons who were put in danger of losing their lives was stunning. Not only were the people who were victims at the bank held at gunpoint and absolutely terrified – I listened to their testimony – everyone in that bank became a victim and was placed in danger when you entered in there with a weapon with the intent to rob them. There are so many times where that goes wrong and people lose their lives.

Everyone, not just the pursuing officers, but everyone who was on the road that day was placed in danger of losing their lives, not only because of your shooting out of the car, which easily could have hit a passerby and not just the officer, but because of the reckless way that your co-Defendant was driving as you were attempting to get away from the crime. The roads that day were horrific. Any person on that road could have been hit, injured, or killed by the actions that you and your co-Defendants took.

You shot directly at Officer Winer. I understand that your attorney's argument is that you didn't intend to harm him, but the fact of the matter, sir, is that a jury found that you intended not only to harm him, but to kill him. You shot directly at his patrol car a number of times and it is through the grace of God that you didn't hit him.

I don't know why you didn't shoot Officer Roth. If you had, this would [result in] additional charges against you. But the fact of the matter is you were a fleeing felon who had fired shots at an officer after robbing a bank full of innocent civilians, and the fact that Officer Roth used force against you is certainly not surprising to this Court.

-4-

Assuming that Williams was sentenced within the guidelines, his sentence must be affirmed. Our Court has recently stated:

> When a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information. MCL 769.34(10). Defendant does not dispute that his sentence was within the recommended minimum guidelines range, and he does not argue that the trial court relied on inaccurate information or that there was an error in scoring the guidelines. Therefore, this Court must affirm the sentence. [*People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016).]

The same is true here. Williams does not argue that the trial court relied on inaccurate information or erred in scoring the guidelines. In fact, his trial counsel specifically requested that he be sentenced within the guidelines.

## C. DOUBLE JEOPARDY

In his Standard 4 brief, Williams argues that he was wrongfully charged with three counts of armed robbery for one continued transaction. Williams's double jeopardy challenge is an issue of constitutional law that is reviewed de novo on appeal. *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008).

Both the United States and Michigan Constitutions prohibit multiple punishments for the same offense. US Const, Am V; Const 1963, art 1, § 15; *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004); *People v Gibbs*, 299 Mich App 473, 489; 830 NW2d 821 (2013). However, "double jeopardy does not apply to crimes committed against different victims, even if the crimes occurred during the same criminal transaction." *People v Hall*, 249 Mich App 262, 272; 643 NW2d 253 (2002).

Williams seems to argue that he only robbed one bank and, therefore, it was an overstep to charge and convict him of three separate counts of armed robbery. However, our Michigan Supreme Court has stated that "a taking that constitutes a 'single offense' under the larceny statute may give rise to multiple convictions under the armed robbery statute. The appropriate 'unit of prosecution' for larceny is the taking at a single time and place without regard to the number of items taken; the appropriate 'unit of prosecution' for armed robbery is the person assaulted and robbed." *People v Wakeford*, 418 Mich 95, 112; 341 NW2d 68 (1983). This is because the "focus of the armed robbery statute is on the person assaulted." *People v Ford*, 262 Mich App 443, 456; 687 NW2d 119 (2004), quoting *People v Davis*, 468 Mich 77, 81–82; 658 NW2d 800 (2003).

The evidence clearly established that Williams committed three separate armed robbery offenses against each of the three bank tellers when he pointed a gun at each of them and demanded the contents of their cash drawers. Thus, Williams committed crimes against three different victims and double jeopardy is not implicated.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, Williams argues that he received ineffective assistance of counsel at trial. "[A] defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). This Court denied Williams's motion to remand for a *Ginther*[1] hearing. *People v Williams*, unpublished order of the Court of Appeals, entered July 6, 2017 (Docket No. 333904). As such, the Court's review is limited to mistakes apparent on the record. *Heft,* 299 Mich App at 80.

"To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. In order to demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003), citing *Strickland v Washington,* 466 US 668, 687; 104 S Ct 2052; 80 L Ed2d 674 (1984); *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994).

### 1. FAILURE TO REQUEST COMPETENCY HEARING

Williams claims that counsel was ineffective for failing to request a competency hearing based on his mental health history.

MCL 330.2020(1) provides:

A defendant to a criminal charge shall be presumed competent to stand trial. He shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner. The court shall determine the capacity of a defendant to assist in his defense by his ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial.

"The issue of incompetence to stand trial may be raised by the defense, court, or prosecution." MCL 330.2024. However, "[t]he issue of competence can only be raised by evidence of incompetence." *People v Blocker*, 393 Mich 501, 508; 227 NW2d 767, 769 (1975). As previously stated, Williams's PSIR has not been provided. Nor is there anything in the lower court record or transcripts that indicate Williams suffered from mental illness. Williams's demeanor and behavior throughout the proceedings, along with his unsubstantiated medical diagnoses, failed to raise a bona fide doubt as to his competency. Given the sparse record, it cannot be said that counsel was ineffective for failing to move for a competency hearing.

Nor can it be said that trial counsel was ineffective for failing to conduct a pre-trial investigation into Williams's mental health. There is no record evidence that Williams suffered from mental illness. Even his appellate brief sheds no light on his alleged mental illness. He

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

cannot show, therefore, that counsel was ineffective for failing to discover his alleged mental illness.

## 2. FAILURE TO REQUEST JURY INSTRUCTION REGARDING ACCOMPLICE TESTIMONY

Williams argues that trial counsel was ineffective for failing to request an instruction on accomplice testimony. The allegation is belied by the record. The trial court gave the jury a lengthy instruction regarding accomplice testimony. Even if trial counsel did not specifically request the instruction, there was no prejudice because the trial court, in fact, gave the instruction.

## III. DOCKET NO. 334113

## A. SUFFICIENCY OF THE EVIDENCE

Young argues that there was insufficient evidence to support the jury's verdict. A defendant's challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "In examining the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks omitted).

Young was convicted as an aider and abettor. In order to be convicted under an aiding and abetting theory, the prosecution must prove:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006).]

"The phrase 'aids or abets' is used to describe any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). "In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime." *Id*. at 71. Whether and to what extent a defendant acts or gives encouragement "must be determined on a case-by-case basis." *Id*.

There was sufficient evidence to support Young's conviction. Hampton testified that she was with Williams and Young when they discussed "hitting a lick." Although there was no real concrete plan at the time, Hampton understood this to mean that there was going to be a robbery. Both men indicated that they would need Hampton's help and that she would be driving. Although Hampton did not see Young with either the long gun or the handgun, she suspected that he was the one that put the long gun in her car. Hampton had previously moved the handgun

from the kitchen into Young's room. Hampton also saw Young hand Williams the drawstring bag Williams used during the robbery. Hampton testified that Young called Chemical Bank and found out that it was closed, which caused them to go to PNC instead. She testified that Young tried to keep her calm while Williams was inside the bank and that Young encouraged her to flee from police. Once caught, Young encouraged Hampton to tell police that they had been carjacked.

Young complains that there was no competent evidence tying him to the crime, but it is clear that he really argues that Hampton was not worthy of belief and that there were simply too many inferences to support his conviction. "[T]he elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). "It is the jury's duty to determine the weight to be accorded any inferences," *id.*, and an appellate court must "not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Based on reasonable inferences, there was sufficient evidence that Young aided and abetted in the robbery. He performed acts and gave encouragement that assisted Williams in committing the crime.

## B. SCORING OF OFFENSE VARIABLES

Young argues that the trial court erred when it assessed 25 points for OV 9 based on its finding that there were 10 or more victims.

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).]

At sentencing, the prosecution asked the trial court to increase the points assessed for OV 9:

> MR. GILBERT: Yes Your Honor, Offense Variable Nine is currently scored 10 points. It's scored 10 points for two to nine victims placed in danger of physical injury or death. In this case, Your Honor, it should be scored, I believe, 25 points.

> You've got ten or more victims who were placed in danger of physical injury or death. First of all, Your Honor, you've [got] at least six people inside the bank that were being robbed by the person.

> Then during the flight in the robbery case, you've got the – the person in the back seat shooting at the police officers chasing. Not only did they put all the police officers that – that were chasing involved, which was more than 10, Your

-8-

Honor, but it also put all the cars that you were watching in the video as they're driving away, in danger also. So there's more than 10 people placed in danger.

Defense counsel responded:

> The only real response I have to that, Your Honor, is that Mr. Gilbert sort of stuck in the word "shooting," and obviously, we already know that my client was not involved in that part of the offense. But with regard to the number of people involved, I'll leave it to the Court's discretion.
>
> THE COURT: Very good. I agree that both the armed robbery and the flight after the armed robbery would have put ten or more victims in danger of injury or – or loss of life. I will have that scored or corrected to 25 points.

The change elevated Young's OV level from Level IV to Level V (S II, p 18).

By conceding that the trial court had discretion to assess 25 points, Young has waived this issue for appellate review.

> Waiver has been defined as the intentional relinquishment or abandonment of a known right. It differs from forfeiture, which has been explained as the failure to make the timely assertion of a right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. Mere forfeiture, on the other hand, does not extinguish an error. [*People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).]

"Counsel may not harbor error as an appellate parachute." *Id*. at 214.

In any event, OV 9, which addresses the number of victims, was properly scored. A court must assess 25 points if ten or more victims were placed in danger of physical injury or death and 10 points if two to nine victims were placed in danger of physical injury or death. MCL 777.39(1)(b) and (c). Pursuant to MCL 777.39(2)(a) provides: "Count each person who was placed in danger of physical injury or loss of life or property as a victim." A victim must be a direct victim of the crime, rather than a member of the community indirectly affected by a crime. *People v Carrigan*, 297 Mich App 513, 515-516; 824 NW2d 283 (2012). However, a victim may include first responders. *People v Fawaz*, 299 Mich App 55, 63; 829 NW2d 259 (2012). "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462, 473, vacated in part, app dis in part 495 Mich 876 (2013). And while it is improper for a trial court to consider a defendant's conduct after the offense is complete, "the course of an armed robbery includes the robber's conduct in fleeing the scene of the crime." *People v Mann*, 287 Mich App 283, 287; 786 NW2d 876 (2010).

There were easily more than 10 victims for purposes of scoring OV 9. There were at least six individuals in the bank when Williams robbed it. Williams also fired at police officers while fleeing from the scene. It is disingenuous for Young to argue that not all of the responding

officers were in danger. Hampton testified that she intentionally crashed her car because she was scared and wanted it all to stop. Those in the other vehicle and those in the roadway were likewise in peril.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, Young argues that he received ineffective assistance of counsel at trial. This Court denied Young's motion to remand for a *Ginther* hearing. *People v Young*, unpublished order of the Court of Appeals, entered April 18, 2017 (Docket No. 334113). As such, the Court's review is limited to mistakes apparent on the record. *Heft,* 299 Mich App at 80.

## 1. FAILURE TO OBJECT TO JOINDER

Young argues that counsel was ineffective for failing to object to the prosecutor's request that the two cases be tried together.

Although this Court denied Young's motion to remand for a *Ginther* hearing, we are not left to guess what defense counsel's strategy was. At a hearing on the prosecution's motion to join the two cases, Young's attorney indicated that he did not object to joinder:

> As I said to the Court in chambers, 999 out of a thousand cases I would object to a joint (inaudible) trial. In this particular case, I don't for two reasons.

> One is, my one concern would be the testimony regarding the charge of assault with intent to commit murder, given particularly that the victim was a police officer. And I realize that would be prejudicial against my client, who is not charged with that.

> On the other hand, I think it's – at least pretty clear to me anyway – that there's a good chance that even in a separate trial, it is part of the res gestae of the robbery, that the Prosecutor would probably be able to get that in.

> Second of all, and more – much more important, Mr. Williams made a statement, which has some value to my client. I cannot get that statement in front of a jury in a separate trial, but I – but if the prosecution intends to use it against Mr. Williams in a joint trial, then – then the jury is going to hear it. And so those – those are the reasons that I did not object.

It is clear that trial counsel's decision not to object to a joint trial was based on sound trial strategy. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 US at 689. For that reason, "[w]e will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 253; 749 NW2d 272 (2008). Young proffers other avenues for addressing counsel's concerns, but those are speculative at best and would have depended upon the trial court's evidentiary rulings. In a joint

trial, there was no doubt what evidence would be presented. Moreover, "[a] failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Young has failed to demonstrate that counsel's performance was deficient or fell below an objective standard of reasonableness under prevailing professional norms.

## 2. FAILURE TO OBJECT

As part of her plea agreement, Hampton was required to undergo a polygraph examination. The results were "inconclusive" regarding her statements about Young's involvement. Trial counsel moved to admit the polygraph and the trial court denied the motion, but left the door open for counsel to renew the request at trial if the prosecution opened the door. At trial, the prosecutor questioned Hampton about whether she saw Young hand Williams the bag. Young argues that the prosecutor opened the door and defense counsel should have objected and renewed his motion to introduce the polygraph evidence. However, it is clear from the record that merely presenting Hampton as a witness and questioning her about Young's involvement did not suffice to "open the door" for a renewed motion to introduce polygraph results. The only way for the door to be opened and the motion renewed was if the prosecutor referenced the polygraph examination, which he did not. Trial counsel was not required to make a meritless motion. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## D. PROSECUTORIAL MISCONDUCT

In his Standard 4 brief, Young argues that the prosecutor was guilty of misconduct. Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

## 1. MISREPRESENTATION OF THE EVIDENCE

Young argues that the prosecutor improperly informed the jury during opening statements that Hampton saw at least one of the guns at Young's house and that Young helped look for banks to rob. Young maintains that Hampton did not testify that she saw Young with any of the guns and, in fact, testified that she did not know where the guns came from. Young claims that the prosecutor further misrepresented Hampton's testimony during closing argument when the prosecutor indicated that Young had supplied Williams with the bag, which was inconsistent with Hampton's initial statement to police.

Young makes only one specific reference to the record, pointing to the prosecutor's comments during opening statement:

> Now, Mr. Young is the passenger, but Ms. Hampton is the driver. Ms. Hampton will be testifying in this case. She'll talk about how she saw at least one of the guns that were used in this instance in her – in the home that she was staying at with Mr. Young. And she's expected to testify how Mr. Young brought (inaudible) the long gun in and how she had seen that handgun in that house before. Mr. Williams didn't live at that house.

-11-

So that's how Mr. Young is involved. He – he knew that this crime was going to occur and he helped in the planning of the crime. He helped him look for banks to rob and he supplied some of the guns.

Opening argument is an opportunity for the prosecutor to state the facts that will be proven at trial. *Ericksen*, 288 Mich App at 200. If the evidence is not presented, reversal is not required if the prosecutor acted in good faith, *People v Johnson*, 187 Mich App 621, 626; 468 NW2d 307 (1991), and the defendant was not prejudiced by the statement, *People v Wolverton*, 227 Mich App 72, 77; 574 NW2d 703 (1997). Here, the statements were not only made in good faith, but Hampton's later testimony supported the prosecutor's statement. Hampton testified that Williams left Hampton's car with a handgun that Hampton had seen at Young's house earlier that day. In fact, she had moved the handgun from the kitchen table into Young's bedroom. She did not know whose it was or how it got into Young's house. Hampton did not see the long gun that morning until she got in her car. While she did not see who put the long gun in her car, she suspected it was Young, explaining that she had left her coat in her car and that the coat suddenly appeared in the apartment. Young had used her car earlier that morning.

Again, Young provides only one specific reference to the record. He otherwise makes a vague argument that the prosecutor continued to mislead the jury during closing arguments. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). To the extent Young argues that the prosecutor misrepresented the facts, while it is true that a prosecutor may not make a statement of fact to the jury that is unsupported by the evidence, *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994), cert den 513 US 1121 (1995); *Unger*, 278 Mich App at 241, a prosecutor is free to argue the evidence and all reasonable inferences arising from it as they relate to his theory of the case, *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *Unger*, 278 Mich App at 236. Young was not denied a fair trial.

## 2. PRESENTATION OF PERJURED TESTIMONY

Young complains that the prosecutor knowingly allowed perjured testimony.

A prosecutor may not knowingly use false testimony to obtain a conviction:

It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment. If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Stated differently, a conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment. Thus, it is the misconduct's effect on the trial, not the blameworthiness of the prosecutor, which]is the crucial inquiry for due process purposes. The entire focus

of our analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability. [*People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009) (quotation marks and citation omitted).]

There is no evidence that the prosecutor had special knowledge that Hampton was lying at trial. For that matter, there is no evidence that Hampton, in fact, provided false testimony. Granted, she made numerous inconsistent statements to police, but that is insufficient to show that she lied during her testimony. Hampton acknowledged that she made many inconsistent statements to police and tried to make herself appear to be "as innocent as possible." This was fodder for cross-examination; it did not demonstrate that the prosecutor suborned perjury.

Affirmed.

/s/ Peter D. O'Connell
/s/ William B. Murphy
/s/ Kirsten Frank Kelly