*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 13, 2019

Plaintiff-Appellee,

v

No. 341724
Wayne Circuit Court
LC No. 17-003156-01-FC

MICHAEL ANTHONY WARNER,

Defendant-Appellant.

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

Defendant, Michael Anthony Warner, appeals as of right his jury trial convictions of three counts of first-degree murder, supported by two theories, MCL 750.316,[1] two counts of assault with intent to murder (AWIM), MCL 750.83, one count of first-degree home invasion (HI), MCL 750.110a(2), one count of being a felon in possession of a firearm (FIP), and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Warner was sentenced as a fourth-offense habitual offender, MCL 769.12, to three terms of life imprisonment without parole for the three murder convictions, two terms of 20 to 40 years' imprisonment for the two AWIM convictions, 10 to 20 years' imprisonment for the HI conviction, and 10 to 15 years' imprisonment for the FIP conviction to be served consecutively to a two-year term of imprisonment for the felony-firearm conviction. We affirm.

This case arises out of the murders of Robert Pittman, Michelle Asaka Davis, and Darrion Jones on March 18, 2017, at a home on Rutherford Street in Detroit, Michigan. On the morning

---

[1] The jury found Warner guilty of three counts of first-degree murder and three counts of felony murder based on home invasion, MCL 750.316(1)(b). At sentencing, Warner's convictions for three counts of felony murder were vacated and Warner was sentenced for three counts of first-degree murder, supported by two theories.

of the murders, Demaro Horne called CD,[2] who lived at the Rutherford home, and told CD that he was coming over with "some pills" and liquor. At the time, Robert, Michelle, Darrion, CD's cousin MJ, and CD's aunt MD were all in the home. After Horne and CD had been drinking in the kitchen for some time, Warner entered the home through the backdoor and began shooting. Robert, Michelle, and Darrion all died from gunshot wounds. Warner and Horne were both arrested for the murders. Horne pleaded guilty to several offenses under a plea agreement requiring him to testify truthfully in this matter. On October 2, 2017, the jury found Warner guilty of the charged offenses.

## I. RECROSS-EXAMINATION

Warner argues that he was denied his constitutional right to a fair trial when the trial court denied him the opportunity to recross-examine prosecution witnesses. We disagree.

"In order to properly preserve an issue for appeal, a defendant must raise objections at a time when the trial court has an opportunity to correct the error . . . ." *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006) (quotation marks and citation omitted). With respect to exclusion or limitation of evidence, the defendant must also make an adequate offer of proof identifying relevant evidence or issues that the defendant was unable to address. *People v McPherson*, 263 Mich App 124, 137; 687 NW2d 370 (2004). Following the prosecutor's redirect-examination of MJ, the trial court refused defense counsel's request to conduct a recross-examination. Defense counsel did not object to the trial court's ruling. On appeal, Warner argues that the trial court's ruling foreclosed recross-examination of all witnesses. But defense counsel did not question whether the ruling applied to all witnesses or solely to MJ, nor did he object to the trial court's ruling at any other time during trial. Therefore, we consider this issue unpreserved.

This Court reviews unpreserved claims for plain error. *People v Gibbs*, 299 Mich App 473, 492; 830 NW2d 821 (2013). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

A defendant has a constitutional right to confront witnesses against him. US Const, Am VI; Const 1963, art 1, § 20; *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012). "A primary interest secured by the Confrontation Clause is the right of cross-examination." *People v Gaines*, 306 Mich App 289, 315; 856 NW2d 222 (2014). "A limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998). However, "[t]he right of cross-examination does not include a right to cross-examine on irrelevant

---

[2] To protect their anonymity, we will refer to those witnesses who were not charged in connection with this case by their initials only.

issues. . . ." *Gaines*, 306 Mich App at 316 (quotation marks and citation omitted; alteration in original). "The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998) (quotation marks and citation omitted). "Rather, the Confrontation Clause protects the defendant's right for a *reasonable* opportunity to test the truthfulness of a witness' testimony." *Id*. at 191. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about . . . interrogation that is repetitive or only marginally relevant." *Gaines*, 306 Mich App at 316 (quotation marks and citation omitted; alteration in original).

Furthermore, MRE 611(a) specifically permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." The trial court may also "limit cross-examination with respect to matters not testified to on direct examination." MRE 611(c). In addition, the defendant must "make an adequate offer of proof that identified what relevant evidence he was unable to present or what issues he was unable to adequately explore because of the trial court's limitation." *McPherson*, 263 Mich App at 137. See also MRE 103(a)(2) (precluding error predicated on exclusion of evidence unless substance of excluded evidence is apparent or made known to the court by offer of proof).

Warner argues that he was deprived a fair trial when he was denied the opportunity to recross-examine MJ. When defense counsel attempted to recross-examine MJ, the trial court said: "No. [The prosecutor] has the burden of proof. That's why she gets redirect." Warner argues that MJ was a critical witness because he was the only person to pick Warner out of a lineup, but was also a weak witness because he failed to initially identify Warner as one of the assailants following the murders. However, Warner does not assert that any new evidence emerged during MJ's redirect-examination or what questions defense counsel would have asked on recross-examination but for the trial court's ruling. Thus, Warner has failed to make an adequate offer of proof that he was denied his right to a fair trial when the trial court denied recross-examination of MJ. *McPherson*, 263 Mich App at 137.

Moreover, the trial court did not err in ruling that defense counsel could not recross-examine MJ. During cross-examination, MJ admitted that he did not identify Warner when he initially spoke to the police or at the preliminary examination because he was afraid; defense counsel then asked MJ a series of questions as to whether MJ truly had any reason to be afraid when he previously testified at the preliminary examination. In response, the prosecutor also asked MJ a series of questions regarding his fear at the time of the preliminary examination. MJ testified that, despite Warner being in jail, he was still afraid of Warner. MJ also agreed that the police could not protect him from what happens "in the hood." The redirect-examination was focused solely on responding to defense counsel's questions, and therefore did not raise any subject matters on which defense counsel had not already questioned MJ. Thus, Warner was not denied his right to confront MJ or prejudiced by the inability to recross-examine him.

Warner asserts that the trial court's holding with respect to recross-examination of MJ foreclosed recross-examination of all prosecution witnesses. Warner argues that, as a result of

the trial court's holding, he was denied a fair trial when he was unable to recross-examine four[3] witnesses who purportedly offered new testimony on redirect-examination: the officer in charge of the case, Warner's cousin DW1, the prosecutor's DNA analysis expert, and Horne. However, Warner has neither identified any new topics raised during the redirect-examination of DW1 or the officer in charge nor does Warner state what questions defense counsel would have asked if recross-examination had been permitted. Thus, Warner's argument as to these witnesses is without merit because he has failed to offer adequate proof as to what issues he was unable to explore. *Id*. See also *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001) ("Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position.") (quotation marks and citation omitted).

In regard to the prosecutor's expert in DNA analysis, Warner asserts that, during redirect-examination, the prosecutor asked about the meaning of "peer review" and the fact that the Michigan State Police DNA findings are subject to such review. Warner asserts that the expert testified about the level of review performed at the crime laboratory, and defense counsel was unable to challenge anything the expert said regarding that topic. During direct-examination, the expert testified regarding the process for determining the DNA profile of a given sample, as well as the process by which she determined the likelihood that a particular person's DNA contributed to the sample. Using that process, the expert found very strong support that Warner was one of three people who contributed to DNA discovered on the grip of a handgun recovered from the scene. On cross-examination, defense counsel questioned the expert at length about her analytical process, asking her whether there were specific standards used, or whether she referenced a manual or a book in order to interpret DNA samples. The expert explained that one aspect of the process involved the use of a computer program that interprets DNA profiles and produces a statistical ratio as to the likelihood that a person's DNA contributed to a provided sample. Defense counsel then inquired as to the reliability of this form of testing or whether there was an error rate with the specific computer program used, to which the expert responded that the program was extremely reliable and that she had never seen the program inaccurately generate results. On redirect-examination, the prosecutor similarly inquired about the reliability of the expert's results, asking her whether her results were subject to peer review. The expert responded that all reports undergo two reviews: a technical review, during which a qualified analyst will analyze the entire case to check the expert's work, and an administrative review to check for clerical errors in the report. The expert also confirmed that her report in this case passed this peer review process.

The prosecutor was responding to defense counsel's questions concerning the reliability of the expert's testing method. Defense counsel was given the opportunity to question the expert at length about her methods and analysis. Thus, defense counsel was given the chance to test the expert's credibility and the reliability of her opinion. Furthermore, Warner has again failed to offer any specific questions that would have been asked of the expert regarding peer review that

---

[3] Although Warner indicated in his appellate brief that five witnesses provided new evidence during their redirect-examinations, that statement was only followed by the names of four witnesses.

would have elicited testimony that was both relevant and noncumulative. Thus, Warner has failed to establish plain error on this ground.

Warner also refers to five specific matters that Horne testified about on redirect-examination, and argues that the trial court's ruling regarding recross-examination left defense counsel unable to question Horne about those matters. Specifically, Warner argues that he was precluded from challenging Horne's redirect-examination testimony concerning (1) Horne's connection to Warner and "the pill business"; (2) Warner's brothers; (3) Horne's physical state at the time he was questioned by the police; (4) "whether taking the deal offered by the prosecutor had been 'smart or stupid,' "; and (5) whether Horne would be labeled as a "snitch" as a result of his testimony. Once again, Warner merely asserts that he was denied the ability to recross-examine Horne on these topics without providing any support or analysis for this position. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. Therefore, this Court concludes that these issues are abandoned on appeal because Warner does not provide any support for his contentions. Moreover, having reviewed the entirety of Horne's testimony at trial, we conclude that each of the topics identified by Warner involve matters that defense counsel could have, or did, ask Horne about during his first cross-examination or matters that bore little or no relevance to the crimes for which Warner was being tried. And, yet again, Warner does not identify specific questions counsel would have asked of Horne or testimony that would have been elicited in response to those questions. Therefore, Warner has not established that he was deprived a fair trial by the trial court's alleged preclusion of recross-examination.

Furthermore, even if Warner had established error arising from the trial court's ruling regarding recross-examination, any such error did not affect Warner's substantial rights. The evidence against Warner was overwhelming. Three witnesses testified regarding conversations with Warner in which Warner referred to a motive for committing the murders. Eyewitness testimony from MJ and Horne placed Warner at the scene of the crime, and DW2, the mother of Warner's child, indicated that Warner admitted to shooting three people. Another resident of Rutherford Street saw a gold Cobalt speed away from the house after the shooting, and testimony established that Warner had access to a gold Cobalt through DW2. An expert analyzed a mixed DNA profile recovered from the grip of a handgun used in the shooting and found strong support for the conclusion that Warner contributed to the DNA on the gun. Finally, Horne testified regarding the events of the evening and Warner's role in the shooting, and Horne's testimony was largely corroborated by CD, MD, MJ, and DW2. Furthermore, defense counsel was given the opportunity to cross-examine all of the witnesses thoroughly at trial. Thus, to the extent that the trial court precluded defense counsel from engaging in recross-examination, it is improbable the trial court's ruling affected the outcome of the lower court proceedings.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or a *Ginther*[4] hearing with the lower court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Warner did not move for a new trial or a *Ginther* hearing below, and his motion to remand for that purpose was denied. *People v Warner*, unpublished order of the Court of Appeals, entered August 17, 2018 (Docket No. 341724). Consequently, our review is limited to mistakes apparent on the record. *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016).

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *Id*. at 187. "Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *Id*. at 188. In order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden of establishing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). There is also a "strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. It is well-settled that "[t]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011) (quotation marks and citation omitted).

### A. FAILURE TO OBJECT TO WITNESS TESTIMONY REGARDING THREATS, DOMESTIC VIOLENCE, AND FEAR OF WARNER

Warner argues that defense counsel was ineffective for failing to object to DW2's testimony that she felt threatened, feared Warner, and had been the victim of domestic violence because this testimony was irrelevant and highly prejudicial to Warner. Warner similarly challenges MJ's testimony about being fearful of Warner. We disagree.

"Evidence of a defendant's threat against a witness is generally admissible as conduct that can demonstrate consciousness of guilt," *Kelly*, 231 Mich App at 640, but such evidence is only admissible for that purpose if there is evidence linking defendant to the threats, *People v Lytal*, 119 Mich App 562, 576-577; 326 NW2d 559 (1982). However, evidence that a witness was threatened by someone other than defendant is admissible to explain why a witness has given inconsistent statements and to explain a witness's reluctance to testify. *Kelly*, 231 Mich App at 640; *People v Clark*, 124 Mich App 410, 412; 335 NW2d 53 (1983). This is so because, "[a] witness' motivation for testifying is always of undeniable relevance and a [party] is entitled to have the jury consider any fact that may have influenced the witness' testimony." *People v Minor*, 213 Mich App 682, 685; 541 NW2d 576 (1995).

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

During direct-examination, the prosecutor questioned DW2 about the night of the murders, specifically asking DW2 whether Warner had blood on his clothes when he returned home with Horne. DW2 testified that she saw blood on Horne, but indicated that she did not remember seeing blood on anyone else. Because this testimony was inconsistent with DW2's previous statement, the prosecutor asked DW2 a series of questions regarding her fear of Warner and her fear of testifying. DW2 testified that she both loved and feared Warner and that she was so fearful that she had to testify from a remote location at Warner's preliminary examination. DW2 also admitted that Warner had been violent toward her in the past and, after she gave her statement to the police, her home was burned down. The prosecutor then confronted DW2 with a statement she gave the police and, again, asked DW2 if Warner had blood on his clothing when he returned home after the shooting. This time, DW2 answered affirmatively.

Warner has failed to meet his burden of establishing that defense counsel's failure to object to DW2's testimony fell below an objective standard of reasonableness. In regard to the poststatement arson, DW2 appeared to perceive this as a threat. While the arson was not linked directly or indirectly to Warner, the prosecutor was not admitting this evidence to establish Warner's consciousness of guilt; rather, the prosecution elicited the testimony in an effort to explain why DW2 had provided an inconsistent statement. Thus, DW2's testimony that she felt threatened was admissible, and any objection by defense counsel would have been futile. We will not fault defense counsel for failing to raise frivolous objections.

DW2's testimony that she feared Warner and had been a victim of domestic violence at his hands was likewise relevant to the jury's consideration of her inconsistent testimony. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. DW2 testified that Warner admitted being at the Rutherford home and shooting three people. Given her knowledge of this admission, DW2 was a crucial witness, and the credibility of her statements before and at trial was highly relevant to the determination of Warner's guilt. Moreover, although testimony that Warner had been physically violent to DW2 was undeniably prejudicial to Warner, "[a]ll relevant and material evidence is prejudicial[.]" *People v Sharpe*, 502 Mich 313, 333; 918 NW2d 504 (2018). This Court is "concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations." *Id*. Because physical violence was only mentioned one time, and it was in the context of trying to explain DW2's reluctance to testify against Warner, the testimony was not unduly prejudicial. Thus, defense counsel was not deficient for failing to object on that basis. Further, Warner has not demonstrated that this evidence was outcome-determinative. There was overwhelming evidence of Warner's guilt admitted at trial apart from DW2's testimony, including testimony from Horne and other eyewitnesses, evidence of motive, and physical evidence to corroborate Horne's testimony and place Warner at the crime scene.

Warner also argues that defense counsel was ineffective for failing to object when the prosecutor improperly elicited testimony from MJ regarding his fear of Warner. MJ testified that he did not initially tell the police that he had seen Warner in the house on the night of the murders because he was afraid of Warner. Warner argues that defense counsel should have objected to this evidence because MJ's fear was not material to any element of the crimes. Again, the prosecutor inquired whether MJ was afraid of Warner as a means to explain why MJ

had failed to identify Warner when he first spoke to the police; thus, the evidence was relevant to why MJ had previously provided an inconsistent statement. The prosecutor did not elicit any specific details as to why MJ was afraid of Warner or elicit testimony about Warner's past criminal conduct. Therefore, any objection by defense counsel would likely have been futile, as MJ's fear was relevant to his credibility, and his testimony on that subject was not unduly prejudicial. Even if defense counsel erred in failing to object to MJ's statement, it was not outcome-determinative in light of the other evidence admitted at trial.

## B. FAILURE TO FILE A MOTION IN LIMINE

Warner also argues that defense counsel was ineffective for failing to file a motion in limine to exclude any evidence that witnesses had been threatened. As previously noted, evidence of threats against a witness is admissible for the purpose of explaining the witness's inconsistent statements. *Clark*, 124 Mich App at 412. Thus, defense counsel cannot be faulted for failing to file a meritless motion. *Fonville*, 291 Mich App at 384. Furthermore, given the mountainous evidence against Warner, any deficiency in counsel's performance in this regard did not affect the outcome of the proceedings.

## C. FAILURE TO OBJECT TO HEARSAY

Warner asserts that defense counsel was ineffective for failing to object to "[e]very instance of threats against a witness and criminal acts, i.e., domestic violence and/or arson" because that evidence was "offered to prove the truth of the matters asserted, i.e., that witnesses had been threatened or the subjects of domestic violence or arson . . . ." We disagree.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. MRE 801(c). To the extent Warner challenges testimony from various witnesses that they were fearful of testifying or implicating Warner to the police, their general acknowledgment of fear does not equate with admission of an out-of-court statement. Warner identifies only one specific threat that was described at trial, and that threat is more fully addressed in part III of this opinion. Warner's past domestic violence was mentioned only once, when DW2 agreed that she had "been a victim of physical violence from [Warner]" in the past. DW2's concession did not require her to repeat any out-of-court statements. With respect to the arson at DW2's home after she provided a statement to the police, DW2 implied that she perceived the fire as a threat, but again did not repeat any out-of-court statements that caused this perception. With respect to the arson, LH testified that Warner asked her to remove certain belongings from the home before it was burned. Although this testimony involved an out-of-court statement, as a statement made by Warner and offered against him, it is excluded from the definition of hearsay under MRE 801(d)(2)(A). Therefore, defense counsel's performance was not deficient simply because he failed to make meritless objections on hearsay grounds.

## D. WARNER'S REMAINING ARGUMENTS

Throughout the fact section of his appellate brief, Warner makes additional assertions concerning defense counsel's allegedly deficient performance. For instance, Warner contends that defense counsel failed to impeach certain witnesses, failed to call an additional witness who testified at the preliminary examination, and opened the door to damaging testimony. These

cursory arguments are not properly before this Court because they fall outside the scope of Warner's statement of the questions presented, which focus only on whether Warner was denied the effective assistance of counsel on the basis of defense counsel's failure to file pretrial motions or object to irrelevant and prejudicial evidence introduced at trial. *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009), citing MCR 7.212(C)(5). Moreover, Warner provides no analysis or citation to relevant authorities to support the sporadic criticisms of defense counsel's performance contained in his statement of the facts. Consequently, we consider these issues abandoned. *Kelly*, 231 Mich App at 640-641 ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

### III. EVIDENCE OF THIRD-PARTY THREAT AGAINST HORNE

Lastly, Warner argues that the trial court erred in admitting evidence that DW1 threatened Horne without first balancing the probative value of the evidence against its prejudicial effect. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defense counsel did not object to the admission of this testimony on the ground that it was too prejudicial; therefore, this issue has not been preserved for appellate review. This Court reviews unpreserved claims for plain error affecting substantial rights. *Gibbs*, 299 Mich App at 492.

During direct-examination, while the prosecutor was questioning Horne about the events that occurred on the night of the murder, Horne stated that, while he was in the kitchen talking with CD, "[s]omebody came in." When the prosecutor asked who came into the house, Horne responded, "I don't remember." After asking Horne to review the testimony from his plea hearing, the prosecutor asked Horne a series of questions:

> *Q.* Did you indicate to your attorney today that [DW1] said if you testify today that they were going to kill you in registry?
>
> *A.* Yeah.
>
> *Q.* In fact, [DW1] told you today that if you came in here and testified, they're going to kill you in registry, correct?
>
> *A.* Yes.
>
> *Q.* That is playing on your mind right now, correct?
>
> *A.* Yes.
>
> *Q.* The fact of the matter is you do remember, correct?
>
> *A.* Yeah.

-9-

*Q*. But you're afraid to say because they told you that you're going to be killed in registry today if you testify?

*A*. Yeah.

[*The Court*]: Who is "they?"

[*Prosecutor*]: [DW1] told you today, correct?

[*Horne*]: Yes.

Evidence that a witness was threatened by a third party is admissible to explain why a witness has given inconsistent statements. *Clark*, 124 Mich App at 412. "A witness' motivation for testifying is always of undeniable relevance and a [party] is entitled to have the jury consider any fact that may have influenced the witness' testimony." *Minor*, 213 Mich App at 685. For purposes of this issue, Warner does not dispute that the above-quoted testimony was offered for a proper purpose. Instead, he argues that the trial court erred by admitting evidence that was more prejudicial than probative. "Generally, all relevant evidence is admissible, and irrelevant evidence is not." *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003), citing MRE 402. However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

As Warner concedes, the evidence concerning DW1's threat against Horne was offered to explain Horne's hesitancy to implicate Warner at trial. As Warner's cohort in the charged offenses, Horne was one of the principal prosecution witnesses, making his credibility highly relevant. Thus, his motivation for testifying in the manner that he did at trial, or any influence on his testimony, had significant probative value concerning Warner's guilt. The evidence that Horne had been threatened just prior to testifying was highly probative in that it helped provide a possible explanation as to why Horne was suddenly unable to remember who entered the Rutherford home on the night of the shooting, despite having agreed to testify as part of a plea deal only two weeks before Warner's trial. Furthermore, the evidence very clearly established that it was DW1, and not Warner, that threatened Horne, and there was no suggestion that DW1 was acting at Warner's behest or with his consent. The risk of prejudice arising from this evidence was, therefore, far less than it would have been had the threat been directly linked to Warner. Warner has not established that the probative value of the evidence was substantially outweighed by the risk of unfair prejudice or that the admission of this evidence constituted plain error.

Warner also argues that the trial court erred when it failed to give a cautionary instruction as to the limited purpose of the testimony and that the absence of a cautionary instruction constituted error requiring reversal. We disagree.

Generally, "[t]his Court reviews de novo claims of instructional error." *People v Hall*, 249 Mich App 262, 269; 643 NW2d 253 (2002). However, because defense counsel did not request a limiting instruction as to the use of the testimony or object to the absence of a limiting instruction, the issue is unpreserved and reviewed for plain error affecting substantial rights.

-10-

*People v Everett*, 318 Mich App 511, 526; 899 NW2d 94 (2017).  "[I]n the absence of a request or objection, the appellate courts have declined to impose a duty on trial courts to give sua sponte limiting instructions . . . even if such an instruction should have been given." *People v Rice (On Remand)*, 235 Mich App 429, 444; 597 NW2d 843 (1999).  Because the trial court did not have a duty to provide a limiting instruction, the trial court's failure to provide a limiting instruction did not constitute plain error affecting Warner's substantial rights.[5]

Warner also argues that defense counsel was ineffective for failing to object to the admission of the evidence that DW1 threatened Horne on the day of trial and for failing to request a cautionary instruction.  We disagree.

After Horne testified that he had been threatened, the trial judge expressed concern over the prejudicial effect of Horne's testimony.  The trial court then adjourned the proceedings for the day to allow the prosecutor to present caselaw regarding the admissibility of Horne's testimony.  When trial resumed the following day, the trial court indicated that it read the caselaw and ruled that the testimony was admissible.  Because the trial court sua sponte considered and rejected the risk of unfair prejudice as a basis for excluding Horne's testimony regarding the threat, Warner cannot demonstrate that defense counsel's failure to object to Horne's testimony affected the outcome of the proceedings.  Moreover, given the overwhelming evidence of Warner's guilt presented at trial, it is improbable that the outcome would have been different even if the threat against Horne had not been presented to the jury.

Warner also argues that defense counsel was ineffective for failing to request a cautionary instruction as to the limited purpose of the testimony.  Warner has failed to overcome the strong presumption that defense counsel's decision not to request a limiting instruction was a matter of trial strategy.  Because Horne testified that DW1 had been the person to threaten him, rather than Warner, defense counsel may not have wanted to bring more attention to the issue by implying that Warner was somehow tied to or responsible for DW1's conduct.  However, even if defense counsel's performance fell below an objective standard of reasonableness, it did not affect the outcome of the proceedings in light of the substantial evidence presented at trial.

Affirmed.

/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica

---

[5] We further note that while the trial court did not give a specific limiting instruction regarding the evidence of DW1's threat against Horne, consistent with M Crim JI 3.6, the trial court did instruct the jury that it should consider threats or other influences that may have affected a witness in assessing his or her credibility.